*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0447p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SHARON PALKOW,

    *Plaintiff-Appellant,*

  *v.*

CSX TRANSPORTATION, INC., HARRY CRAWFORD
and DIANE TAVARES,

    *Defendants-Appellees.*

No. 04-4060

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-00844—Lesley Brooks Wells, District Judge.

Submitted: July 29, 2005

Decided and Filed: November 18, 2005

Before: ROGERS and SUTTON, Circuit Judges; ROSEN, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** Merrie M. Frost, Mentor, Ohio, for Appellant. John Lewis, Todd H. Lebowitz, Kelly M. King, BAKER & HOSTETLER, Cleveland, Ohio, for Appellees.

---

**OPINION**

---

  ROSEN, District Judge. Plaintiff Sharon Palkow appeals an Opinion and Order of the District Court of the Northern District of Ohio denying her motion to remand and granting the Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss her complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, we conclude that this action was improperly removed from the state court as federal subject matter jurisdiction is lacking. Accordingly, we REVERSE the District Court's denial of Plaintiff's motion to remand and direct that the Order and Judgment of dismissal be vacated and the case remanded to state court.

---

[*]The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.  *INTRODUCTION*

The instant action arises out of an earlier federal lawsuit filed by Plaintiff Sharon Palkow[1] against her former employer, CSX Transportation, Inc. ("CSXT") in which Ms. Palkow claimed that she was terminated from her probationary employment as a railroad conductor trainee at CSXT because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.  That case ("*Palkow I*") was tried before a federal jury in December 2003.  The jury found in favor of Defendant CSXT and the District Court entered a judgment accordingly.  Palkow did not appeal or otherwise seek to set aside the jury verdict.

Instead, on March 30, 2004, Palkow filed a second complaint, this time in the Court of Common Pleas for Cuyahoga County, Ohio, claiming that her former co-worker, Diane Tavares, committed perjury when she testified on behalf of CSXT in *Palkow I*, and that Harry Crawford, CSXT's District Superintendent, directed Tavares to lie on behalf of CSXT.  *See* Complaint, Court of Common Pleas No. CV0452653 ("*Palkow II*").  Palkow claimed that Tavares's perjured testimony affected the outcome of the jury verdict in *Palkow I* and directly injured her.  *Id.* ¶¶ 4, 19.  As relief, Palkow requested compensatory damages in excess of $25,000.  *Id.*

CSXT removed the case to the federal district court that had held the jury trial in *Palkow I* alleging federal question jurisdiction as the basis for removal.  Specifically, the Defendants claimed in their Notice of Removal that

> "Plaintiff Palkow's state court action in reality constitutes an attack on the federal jury verdict and resulting judgment as well as the taxation of costs, pursuant to Rule 60 of the Federal Rules of Civil Procedure, and thus Palkow's claims involve a general federal question subject to removal to this Court."

Notice of Removal ¶ 5.

Palkow moved to remand the action to state court and, in response to the motion to remand, the Defendants moved to dismiss Palkow's complaint.  The District Court denied Palkow's motion to remand and granted the Defendants' motion to dismiss on the merits.  This appeal arises out of the district court's rulings on these two motions.

## II.  *FACTUAL AND PROCEDURAL BACKGROUND*

### A.    *Palkow I*

On April 19, 1999, Sharon Palkow began a three-week training program at the Academy of Industrial Training designing to provide hands-on training for individuals seeking employment as train conductors.  After successfully completing the training program, Palkow was hired by Consolidated Rail Corporation ("Conrail") to work at its Collingwood rail yard in Cleveland, Ohio, as a probationary employee during a 60-day period.  On June 1, 1999, while Palkow was still working as a probationary employee, Conrail was acquired by CSXT.  On June 25, 1999, Harry Crawford, District Superintendent of CSXT, terminated Palkow as a CSXT employee.[2]  Palkow

---

[1]The correct spelling of Plaintiff's name is unclear.  Although in Plaintiff's complaint and all of the other district court pleadings Plaintiff's name is spelled "P-A-L-K-O-W," in the District Court's Opinion and Order and in Plaintiff's appeal brief, her name is spelled "P-O-L-K-O-W."  Because this case was docketed both in the district court and in this Court with the PALKOW spelling, this is the spelling we will use in this Opinion.

[2]Crawford determined that Palkow was not capable of performing the conductor's job, noting specifically that she had demonstrated an "inability to hold onto [a] car, release [a] hand brake, comprehend simple instructions and remember [the] physical layout of yards."

disputed her termination asserting that she was capable of performing the tasks required by her job because of her successful performance during the training program.

After her discharge, Palkow filed charges of age and sex discrimination with the Equal Employment Opportunity Commission. She was subsequently granted a right to sue on December 14, 2001, and on January 11, 2002, Palkow filed a complaint in the District Court for the Northern District of Ohio against CSXT alleging age and sex discrimination in violation of the ADEA and Title VII, respectively, as well as claims of retaliation and intentional infliction of emotional distress.

On October 1, 2003, the District Court granted, in part, and denied, in part, CSXT's motion for summary judgment, and dismissed Palkow's claims of age discrimination, retaliation and intentional infliction of emotional distress.

Palkow's remaining claim of sex discrimination was tried to a jury in December 2003. On December 8, 2003, the jury returned a verdict in favor of Defendant CSXT and against Plaintiff Palkow and the District Court entered Judgment accordingly.

Following trial, on January 5, 2004, CSXT filed a motion to tax costs against Palkow. Palkow filed an opposition brief asking the District Court to deny CSXT's motion, or in the alternative, to stay the motion while she decided whether to file a "motion to vacate the judgment or a separate action for violation of due process." (*See* Appellees' Brief, Addendum 5.) On February 9, 2004, the District Court granted CSXT's motion to tax costs and denied Palkow's motion to stay.

Palkow did not move for a new trial or for judgment as a matter of law. Nor did she appeal or otherwise move to vacate the Judgment or file a separate action for violation of due process as she had indicated she was contemplating.

## B.    *Palkow II*

Instead, on March 30, 2004, Palkow filed an action in the Court of Common Pleas for Cuyahoga County, Ohio against Defendants CSXT, CSXT District Superintendent Harry Crawford, and Dianne Tavares, a CSXT employee who had been called by CSXT as a witness on the company's behalf to testify in Palkow's sex discrimination trial. In her state court complaint, Palkow alleged that, contrary to her testimony in federal court in *Palkow I*, Tavares, who had been a fellow probationary employee of the Plaintiff, did have to dismount moving equipment during the Philadelphia training course and that Tavares's testimony in *Palkow I* that no such training occurred was, therefore, perjurious.[3]

---

[3]Plaintiff alleged in her state court complaint in *Palkow II* that:

6.        [I]n support of her case [in *Palkow I*], she [Palkow] did testify that at the training school for her job at the railroad, that she had to dismount from a moving railcar and that the school gave her hands on instruction which proved that she was qualified for the position and that defendant's assertion that she was unable to "hold onto a railcar" was simply a pretext for discrimination.

7.        Defendant Tavares did attend the exact same school as plaintiff, about three months prior to plaintiff, in or about January, 1999.

8.        Defendant Tavares did testify that while she attended the school, she was never requested to dismount from a moving railcar and that the school was mainly classroom instruction.

9.        Defendant Tavares's testimony was false, in that Tavares did have to jump from a moving railcar while at the school and she did attend numerous hands on instruction while at the school.

On May 6, 2004, CSXT and Tavares removed the case to federal court[4] alleging that Palkow's state court perjury action involved a federal question because the alleged perjury upon which Palkow's civil complaint for damages was based occurred in a prior federal court proceeding.

On May 7, 2004, Palkow filed a motion to remand the action to state court arguing that no federal question was presented in her complaint and, therefore, the district court lacked subject matter jurisdiction. Defendants did not directly respond to the motion to remand. Instead, they filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Palkow's complaint arguing that there was no substantive legal merit to Palkow's civil perjury action. Specifically, Defendants argued that (1) Ohio law does not recognize a civil claim for perjury or conspiracy to commit perjury and (2) to the extent that Plaintiff's complaint could be read as a collateral attack on the prior federal judgment, it should be construed as a motion for relief from judgment under Fed. R. Civ. P. 60 and Plaintiff had not satisfied the requirements of such a motion.

On July 28, 2004, the District Court entered an Order denying Palkow's Motion to Remand and granting the Defendants' Motion to Dismiss. With respect to Plaintiff's Motion to Remand, although the District Court noted that Ms. Palkow's complaint, on its face, did not allege a federal cause of action, it held that a substantial federal question -- *i.e.,* the validity of the judgment in *Palkow I* -- had been raised, and construing the complaint as an independent action for relief from the judgment pursuant to Fed. R. Civ. P. 60(b), concluded that the case was properly removed to federal court. In reaching that conclusion, the District Court relied upon the decisions in *Black v. Niagara Mohawk Power Corp.*, 641 F. Supp. 799 (N.D.N.Y. 1986), and *Villareal v. Brown Express, Inc.,* 529 F.2d 1219 (5th Cir. 1976), in which the courts found removal proper under Fed. R. Civ. P. 60(b). The District Court reasoned:

> . . . The courts, in both *Black* and *Villareal* identified Rule 60(b) of the Federal Rules of Civil Procedure as providing the basis for the plaintiff's collateral attack on the federal judgment. While Rule 60(b) provides that parties may file a motion for relief from judgment because of, among other reasons, fraud, misrepresentation, or other misconduct by an adverse party, this rule "does not limit the power of a court to entertain an independent action to relieve a party from a judgment."
>
> Like the plaintiffs in *Black* and *Villareal*, Ms. Polkow has nominally pled a state cause of action which, in substance and effect, attacks the validity of this Court's judgment in *Polkow I*. Notwithstanding her protestations to the contrary and her unsuccessful attempts to craft her complaint as solely a state law claim, Ms. Polkow's complaint is really an independent action seeking relief from this Court's judgment in *Polkow I*. Given the nature of her claim, this Court needs no independent basis for the exercise of jurisdiction over her complaint because its jurisdiction is firmly grounded in the underlying lawsuit. *U.S. v. Beggerly*, 524 U.S. 38, 45-6 (1998). Therefore, Ms. Polkow's complaint was properly removed to this Court and her motion to remand is denied.

7/28/04 Memorandum of Opinion and Order, p. 6.

Having determined that it had jurisdiction over the matter, the District Court then dismissed Palkow's complaint finding:

---

Complaint ¶¶ 6-9.

[4]Harry Crawford had not been served with process at the time of CSXT and Tavares's removal but nonetheless concurred and joined in the removal.

While this Court has jurisdiction to consider Ms. Polkow's claim, her independent action to obtain relief from the judgment in *Polkow I* lacks merit. An independent action to obtain relief from judgment is only available to prevent "a grave miscarriage of justice." *Beggerly*, 524 U.S. at 47. Allegations of perjury, like those advanced by Ms. Polkow, are insufficient to support an independent action for relief from judgment. *2300 Elm Hill Pike, Inc. v. Orlando Residence, Ltd.*, 168 F.3d 490 [1998 WL 808217] at * 2 (6th Cir. 1998); *see also H.K Porter Co, Inc. v. Goodyear Tire and Rubber Co.*, 536 F.2d 1115, 1118 (noting that the alleged perjury of a witness is not a ground for an action for fraud upon the court); *Geo. P. Reintjes, Inc. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir. 1995); *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (9th Cir. 1985). . . . Ms. Polkow could have addressed Ms. Tavares' alleged perjury during *Polkow I* or could have filed a motion for relief from judgment pursuant to Rule 60(b)(3). . . . She may not, however, maintain an independent action to obtain relief from a federal court judgment based on allegations of perjury. Accordingly, Ms. Polkow's complaint is dismissed.

*Id.* at 6-7. The District Court did not address Defendants' alternative argument that Ohio law did not support a civil cause of action for perjury or conspiracy to commit perjury.

## III. *DISCUSSION*

### A.     *STANDARD OF REVIEW*

This Court reviews *de novo* the existence of subject matter jurisdiction as a question of law and also reviews *de novo* the denial of a motion to remand. *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000), *cert. denied*, 532 U.S. 953 (2001); *Harper v. AutoAlliance Int'l., Inc.*, 392 F.3d 195, 200-201 (6th Cir. 2004). Likewise, a district court's order granting a motion to dismiss for failure to state a claim upon which relief may be granted is reviewed *de novo*. *Inge v. Rock Financial Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).

### B.     *THE DISTRICT COURT ERRED IN DENYING PLAINTIFF'S MOTION TO REMAND*

As indicated above, there is nothing on the face of Plaintiff's Complaint which established federal subject matter jurisdiction – no federal statute, constitutional provision or other federal right is alleged or asserted.[5] The District Court, however, reasoned that, by claiming that Ms. Tavares committed perjury in *Palkow I*, Plaintiff was "attacking the validity of a prior federal judgment," and this thereby "raises a substantial federal question."

Given the imprecise nature of the contours of federal question jurisdiction in cases such as this, a discussion of the development of the law in this area is instructive to our analysis. As noted, in reaching its conclusion, the District Court relied upon *Black v. Niagara Mohawk Power Corp*, 641 F. Supp. 799 (N.D.N.Y. 1986), and *Villareal v. Brown Express, Inc.*, 529 F.2d 1219 (5th Cir. 1976). Upon close scrutiny, however, it is clear that these cases no longer are good law.

In *Black v. Niagara Mohawk,* the case principally relied upon by the district court, the plaintiff received and accepted a promotion which was conditioned upon his changing his residence to Old Forge, New York. When he failed to move to Old Forge, he was demoted to his former position. Black filed a grievance against Niagara Mohawk through his union. The union unsuccessfully pursued the grievance through two steps of the collectively-bargained grievance

---

[5]There is no dispute that diversity jurisdiction does not exist. It is undisputed that Ms. Tavares and Mr. Crawford are non-diverse defendants and only an amount "in excess of $25,000" is alleged as the amount in controversy.

procedure and after the second denial, declined to take the grievance to arbitration. Black did not appeal that decision which was his right under the collective bargaining agreement. Instead, he filed a complaint against Niagara Mohawk in New York state court. ("*Black I*").

Niagara Mohawk removed the action to federal court on the grounds that the action arose under Section 301 of the LMRA. Soon thereafter, Black was granted leave to amend his complaint to add claims of breach of the collective bargaining agreement against his employer and breach of duty of fair representation against his union. After the close of discovery, the district court granted the defendants' motions for summary judgment finding that there was no evidence whatsoever that the union had acted maliciously or arbitrarily with regard to the handling of Black's grievance and further held that Black had failed to exhaust his contractual remedies. *See* 641 F. Supp. at 800. The Second Circuit affirmed on the basis of the district court's determination concerning the union's conduct but expressed no opinion as to the effect of Black's failure to exhaust his contractual remedies. *Id.* at 801.

Five years later, Black commenced another action, this time in the federal district court for the Northern District of New York, against Niagara Mohawk, its representatives, and Black's union ("*Black II*") asserting causes of action based upon breach of an alleged agreement to except Black from Niagara Mohawk's residency requirements in connection with his 1976 promotion, breach of the duty of fair representation, and fraud in obtaining the judgment in *Black I*. After receiving some correspondence from defendants' counsel, Black voluntarily dismissed *Black II*. *Id.*

Ten days later, however, Black commenced yet a third action ("*Black III*") in New York state court against the same defendants alleging a single cause of action sounding in fraud. In his complaint, Black alleged that the defendants had obtained summary judgment in *Black I* by means of false statements in the affidavit of one of the individual defendants, Charles Carl. Specifically, Black claimed that the statements in Carl's affidavit that Black accepted the 1976 promotion with full knowledge of and without objection to Niagara Mohawk's residence requirements were false and were made with intent to deceive the court. *Id.* The defendants subsequently removed the action to the District Court for the Northern District of New York, whereupon Black moved to remand. Black claimed that federal subject matter jurisdiction was lacking because his fraud claim was a state law claim. *Id.* The defendants opposed the remand motion and cross-moved for summary judgment and/or to dismiss Black's claims. *Id.*

The district court denied the motion to remand and granted the defendants' cross-motions to dismiss Black's complaint, explaining:

> In the opinion of the Court, Black is necessarily relying upon federal law for the relief sought in his complaint despite his attempt to couch the complaint solely in terms of state law. His claim that the judgment in *Black I* was obtained by fraud clearly constitutes an attack on the validity of that judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. As such, the viability of the claim must be determined by reference to standards enunciated in cases decided under the rule. Accordingly his claim involves a general federal question and was properly removed to this Court.

641 F. Supp. at 801-802 (footnotes and citation omitted).

The court continued:

> In this case, federal law provides the exclusive remedy for attacking the validity of a federal judgment. In the words of a recent law review article on this subject, federal law has "occupied the entire field" of the law at issue. *See* Comment, *Federal Preemption, Removal Jurisdiction, and the Well-Pleaded*

*Complaint Rule*.  51 U. Chi. L. Rev. 634, 663-66 (1984). . . .  Black's claim falls within the field of law preempted by Rule 60(b).  Black has a remedy available to him in federal court if he establishes his right to relief.  In this situation, it has consistently been held that removal jurisdiction exists once the plaintiff's claim is deemed federal.  *See, e.g., Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

*Id.* at 802 n. 3.

As the quoted excerpt from *Black* demonstrates, the Northern District of New York relied on *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394 (1981), a decision which is no longer good law.  *Moitie* involved an action brought by the Government against Federated Department Stores and others alleging violations of the Sherman Act, 15 U.S.C. § 1.  Seven parallel actions were subsequently filed by private plaintiffs against Federated and others, including an action by Marilyn Moitie in California State Court (*Moitie I*) and an action by another individual, Floyd Brown, in the United States District Court for the Northern District of California (*Brown I*).  Each of these seven complaints tracked almost verbatim the allegations of the Government's Sherman Act complaint.  *Moitie I*, however, only referred to state law, but was removed to federal court on the basis of both diversity and federal question jurisdiction.  All seven private actions were consolidated and assigned to a single federal judge and then dismissed on the grounds that the plaintiffs had not alleged injuries to their business, as required under the Sherman Act.  Five of the plaintiffs appealed their dismissals to the Court of Appeals for the Ninth Circuit.  Ms. Moitie and Mr. Brown chose instead to re-file their cases in state court, creating *Moitie II* and *Brown II*.  Both *Moitie II* and *Brown II* raised only state law claims, although they made allegations similar to those in *Moitie I* and *Brown I*.

Federated Stores removed *Moitie II* and *Brown II* to federal court and then moved to have both cases dismissed on the grounds of res judicata.  The District Court first denied Moitie and Brown's motion to remand, reasoning that because *Moitie II* and *Brown II* were in many respects identical to *Moitie I* and *Brown I*, even though *Moitie II* and *Brown II* only raised state law claims, they were properly removed because the court found  they were essentially "federal in nature." *Moitie,* at 397, n.2.  The District Court then dismissed *Moitie II* and *Brown II* on the grounds of res judicata because *Moitie II* and *Brown II* involved the same parties, alleged the same offenses, and arose in the same time period as *Moitie I* and *Brown I*.  This time, Moitie and Brown appealed.

The Ninth Circuit affirmed the denial of the motion to remand but reversed the district court's res judicata dismissal of the complaints because the dismissal rested on a circuit decision that had been overruled during the pendency of Moitie's and Brown's appeal.

The Supreme Court reversed the Ninth Circuit, stating: "Res judicata consequences of a final, unappealed judgment on the merits are not altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."  *Id.* at 398.  In a footnote in the *Moitie* opinion, however, the Supreme Court commented on the removal of the state law claims of *Moitie II* and *Brown II* to federal district court:

The Court of Appeals also affirmed the District Court's conclusion that *Brown II* was properly removed to federal court, reasoning that the claims presented were "federal in nature." We agree that at least some of the claims had a sufficient federal character to support removal. As one treatise puts it, courts "will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum ... [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization.". The District Court applied that settled principle to the facts of this case. After "an extensive review and analysis of the origins and substance of" the two *Brown* complaints, it found, and the Court of

Appeals expressly agreed, that respondents had attempted to avoid removal jurisdiction by "artful [ly]" casting their "essentially federal law claims" as state-law claims. We will not question here that factual finding.

452 U.S. at 397 n.2 (citations omitted).

It is this "essentially federal law claims" footnote that the *Black* court relied upon in determining that removal of *Black III* was proper. However, in 1998, the Supreme Court decided *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 118 S.Ct. 921 (1998), a case in which the Supreme Court took the opportunity to revisit and clarify *Moitie's* footnote 2.

Noting that "*Moitie's* 'enigmatic footnote'. . . has caused considerable confusion in the circuit courts," 522 U.S. at 478, 118 S.Ct at 926 (citations omitted), Justice Ginsberg, writing for a unanimous Court, unequivocally stated: "We . . . clarify today that *Moitie* did not create a preclusion exception to the rule fundamental under currently governing legislation that a defendant cannot remove on the basis of a federal defense." *Id.* As Wright & Miller recognized, Justice Ginsberg effectively delivered the "coup de grace" to the applicability of *Moitie* to support removal when she explicitly noted that the interpretations of *Moitie* in the Second Circuit's decision in *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754 (2nd Cir. 1986), *cert. denied*, 479 U.S. 885 (1986) -- *i.e.*, the case which was at the time of *Black* controlling precedent in the Second Circuit -- and the Ninth Circuit's decision in *Ultramar America, Ltd. v. Dwelle*, 900 F.2d 1412 (9th Cir. 1990), which represented the two leading interpretations of the *Moitie* footnote, were incorrect. *See* 522 U.S. at 474 n.2, 118 S.Ct. at 924 n.2; *see also* 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3722, at 443 (3d ed. 1998).

Although Defendants here are not asserting that a federal defense to *Palkow II* makes removal proper, *Rivet* illustrates that reliance upon *Moitie's* second footnote and its progeny as justification for removal of non-federal claims is no longer appropriate, and that the *Black* and *Moitie* line of cases do not support removal of Ms. Palkow's civil perjury complaint.

The 1976 *Villareal* decision, which was also cited by the District Court here, similarly does not stand up under current law. There, the plaintiff had entered into a settlement agreement in federal court settling a traffic injury lawsuit he had filed against Brown Express, the trucking company which operated the truck that collided with him. After the case was settled, the district court entered an order dismissing the case with prejudice. Seven days later, Villareal filed another lawsuit in Texas state court in which he alleged that Brown Express had converted a tire that was on the vehicle in which Villareal was riding when the accident, which was the subject matter of the federal court action, occurred. According to the state court complaint, the tire was such an important piece of evidence that he was forced to settle his case for personal injuries for substantially less than he could have otherwise obtained. As a result, he claimed that he was entitled to $1 million for the conversion of the tire.

Brown Express removed this second suit to federal court claiming that the plaintiff filed the state court lawsuit in an attempt to increase his recovery for the personal injuries that were the subject of the prior federal action. The district court denied the plaintiff's motion to remand and granted the defendant's motion for summary judgment, and the Fifth Circuit found no error in the district court's retention of jurisdiction over the second action because it found that

[I]n practice, the federal courts usually do not limit their inquiry to the face of plaintiff's complaint but rather consider the facts disclosed on the record as a whole in determining the propriety of removal.

Although appellant's complaint purports to seek damages for conversion of a tire, it is our opinion that the claim in this case is essentially one to recover

additional damages for personal injuries, and can be viewed as an action which attacks the order of dismissal entered by the district court in the prior suit between these parties. The damages alleged by appellant are not based on the actual value of the tire, but on the alleged fraudulent concealment of the tire. . . . Since appellant's claim in the instant action is essentially one claiming fraud as the grounds for relief, the district court properly considered it as being within the purview of Fed. R. Civ. P. 60(b)(3) and granted appellee's petition for removal.

529 F.2d at 1221 (quotation and citations omitted).

As is evident from just the first paragraph quoted above, the *Villareal* court wholly ignored the well-pleaded complaint rule when it stated that it was entitled to look beyond the face of the plaintiff's complaint and consider all facts disclosed on the record in deciding the question of federal subject matter jurisdiction. This holding is untenable under current Supreme Court precedent.

The controlling authority on removal jurisdiction begins with *Franchise Tax Board of The State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1 (1983). In *Franchise Tax Board* the Court emphasized:

Under our interpretations, Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, *only* those cases in which a well-pleaded complaint established either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.

*Id.* at 27 (emphasis added).

The Supreme Court has made clear that, to determine whether a claim arises under federal law, a court, under the "well-pleaded complaint" rule, generally looks only to the plaintiff's complaint. *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96 (1936); *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). If the complaint relies only on state law, the district court generally lacks subject matter jurisdiction and the action is not removable.

However, as *Franchise Tax Board* acknowledged, the Supreme Court has developed a limited exception to the well-pleaded complaint rule: the "complete preemption" doctrine. If Congress intends that a federal statute should "completely preempt" an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 1546-1547 (1987). The complaint may thus be removed to federal court and will be treated as alleging a federal cause of action, notwithstanding that on its face, the plaintiff's complaint alleges only a state-law cause of action.

It is not enough, however, to determine the removability of an action to federal court under the "complete preemption" doctrine that federal law "preempts" state law. ("ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Id.* at 64, 107 S.Ct. at 1547.) Rather, it is only when the federal statutory language demonstrates that Congress has manifested a clear intent that claims not only be preempted under the federal law, but also that they be removable, that they are deemed to be "completely preempted." *See id.* at 66-67, 107 S.Ct. at 1547-1548. "The rationale is that in such situations the federal statutory laws 'supersede both the substantive and remedial provision of state' law creating a strong form of federal preemption--presumably because of the additional need for a strong form of national uniformity implied by Congress when it made federal court jurisdiction exclusive after broadly preempting state law." *Ritchie v. Williams*, 395 F.3d 283, 286 (6th Cir. 2005). In other words, the complete preemption doctrine is not simply one of preemption of the law, it is a sort of "super" preemption

which preempts not only state law, but also creates federal removal jurisdiction -- to use the jargon of the day, it is "preemption on steroids."

What must be made clear, however, is that "complete preemption"-- no matter how powerful when properly present in a case -- is of very limited application: it is a very limited exception to the well-pleaded complaint rule. In fact, the Supreme Court has demonstrated a reluctance to extend application of the "complete preemption" doctrine, largely limiting its finding of complete preemption to a handful of federal statutes, the most widely recognized of these being the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA") and the Employee Retirement Income Security Act, 29 U.S.C. § 1144(a) ("ERISA"). *See Metropolitan Life Ins. Co. v. Taylor, supra*; *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425(1987); *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235 (1968).[6]

Given the limited number of "extraordinary" statutes which the Supreme Court has found to "completely preempt" state law claims so as to permit recharacterization of a plaintiff's claim as a federal claim so that removal is proper, it is apparent that the contours of federal courts' "arising under" jurisdiction do not extend to the case before us. Even the broadest reading of this Court's decision in *Long v. Bando Mfg. of America, Inc.*, 201 F.3d 754 (6th Cir. 2000), cannot justify such an extension. In *Long*, a case that was removed by the defendant on federal question grounds, we affirmed the district court's decision to remand the case based on its determination that it did not have original federal question jurisdiction over the plaintiff's complaint which was phrased as a state-law wrongful discharge claim. In discussing whether federal question jurisdiction nonetheless might exist when the complaint states only a state law cause of action, we first noted that the defendant in that case was not arguing that Long's state law claim was completely preempted by federal law. We then went on to find that even if the plaintiff's state law claim were not completely preempted, federal question jurisdiction might nonetheless exist to support removal:

> The exact contours of the federal courts' jurisdiction under 28 U.S.C. § 1331 are somewhat imprecise. The most important Supreme Court case to deal with this issue in recent years is *Merrell Dow* [*Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S. Ct. 3229 (1986)]. In *Merrell Dow*, the plaintiffs had sued a drug manufacturer on a state-law negligence claim, alleging that its drug Bendectin was misbranded in violation of the Federal Food, Drug and Cosmetic Act (FDCA). *See Merrell Dow*, 478 U.S. at 805-06, 106 S.Ct. 3220. The Supreme Court held that the plaintiffs had not involved the federal courts' "arising under" jurisdiction by raising state-law claims for negligence that incorporated federal drug labeling standards. *See id.* at 817, 106 S.Ct. 3229. Although the scope of the Court's holding in *Merrell Dow* is somewhat unclear, it clearly left open the possibility of federal jurisdiction even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interest is raised by a complaint framed in terms of state law, and if resolution of that federal question is necessary to the resolution of the state-law claim.

---

[6] Other areas in which the Supreme Court has recognized complete preemption include the following: In *Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058 (2003) the Court enunciated a limited extension of the doctrine and held that a state law usury claim against a national bank is "completely preempted" and removable under the National Bank Act, 12 U.S.C. §§ 85, 86. In *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 119 S.Ct. 1430 (1999), the Court found that the Price-Anderson Act also contains an unusual preemption provision, 42 U.S.C. § 2014(hh), that not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state court even when they assert only state-law claims. A number of circuit courts, including the Sixth Circuit, have also determined that certain state law copyright claims are completely preempted under Section 301(a) of the Copyright Act, 17 U.S.C. § 301(a). *See, e.g., Ritchie v. Williams, supra*.

201 F.3d at 759.

Notwithstanding *Long*'s expansive interpretation of *Merrell Dow* as possibly carving out a new, non-complete preemption form of federal question jurisdiction for purposes of removal of state law claims, one thing is clear:  even under *Long*'s interpretation of *Merrell Dow*, in this case, there is no "substantial federal question of great federal interest" raised by Plaintiff's Complaint.  The only "federal" aspect of Plaintiff's civil perjury claim is the fact that the alleged perjury occurred in a federal court action.  There is no "federal question" that needs to be resolved in order to resolve Plaintiff's state-law claim.[7]

As the foregoing discussion demonstrates, removal of state actions purporting to collaterally attack federal judgments presents difficult issues for the courts. To be sure, a federal court will want to protect the integrity of its judgments. But the point of critical importance is that "[i]t is a fundamental precept that federal courts are courts of limited jurisdiction.  The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 2403 (1978).

Any notion that the jurisdictional net should be broadly cast by the courts is at odds with the constitutional establishment of a federal government of limited powers.  The Supreme Court has appealed to this constitutional vision in directing that the removal statutes are to be narrowly construed:

> [T]he policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation.  The power reserved to the states under the Constitution to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution.  "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703 [(1934)].

*Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09, 61 S.Ct. 868, 872 (1941); *see also Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984) (cautioning that, because of the constitutional allocation of powers between the state and federal governments, "[a] federal court is not a general repository of judicial power.")

The Supreme Court's command that federal courts must exercise jurisdictional restraint is perhaps even more compelling in the context of removal than in the context of original jurisdiction. The decision whether to remove a suit to federal court directly implicates the constitutional allocation of authority between the federal and state courts.  The federal judiciary must respect the important objectives the framers sought to achieve when they carefully crafted our federal system and its concomitant national government of limited powers.  Absent specific Congressional command, the expansion of removal jurisdiction by the courts would seem to undermine these important constitutional considerations.

While a party may seek relief from judgment under Fed. R. Civ. P. 60(b) by way of a motion or an independent action, here an independent statutory basis is required to support removal under

---

[7] Although civil perjury actions are not recognized in Ohio, *see Costell v. Toledo Hosp.*, 38 Ohio St. 3d 221, 223-24, 527 N.E.2d 858, 860 (Ohio 1988), in those jurisdictions which do recognize such a cause of action, resolution of such claims generally require demonstrating only that: (1) a judgment has been obtained against a party, (2) by perjury of witness, (3) which was introduced at trial by the adverse party. *See e.g., Kraul v. Maine Bonding & Cas. Co.*, 672 A.2d 1107, 1109 (Me. 1996).

the guise of federal question jurisdiction.  Merely invoking the Federal Rules of Civil Procedure is not sufficient grounds to establish federal question jurisdiction.  *See* Fed. R. Civ. P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts. . . ."); *Creswell v. Sullivan & Cromwell*, 922 F.2d 60, 70 (2nd Cir. 1990) ("The Rules do not provide an independent ground for subject matter jurisdiction over an action for which there is no other basis for jurisdiction.")

In the context of Rule 60 relief, we made this point in *Charter Township of Muskegon v. City of Muskegon*, 303 F.3d 755 (6th Cir. 2002).  There, we held that it is only when the Rule 60 claim either (1) seeks no relief other than relief from a prior judgment or (2) is originally filed in the same court that rendered the judgment that the district court has "continuing jurisdiction" such that no independent basis for subject matter jurisdiction is required.  *Id.* at 763.  Here, Plaintiff's claim was not filed in the same court that rendered the Title VII judgment; it was originally filed in state court.  Moreover, Palkow did not ask in her state court complaint that the federal judgment entered against her be vacated or otherwise seek relief from the judgment.  She simply asserted, as a way to substantiate her claim for monetary damages from the defendants, that Defendant Tavares's alleged perjury "had a substantial effect" on the outcome of her sex discrimination trial.

Under these circumstances, we find no basis for the District Court's exercise of subject matter jurisdiction over *Palkow II.*

### CONCLUSION

In sum, for all of the foregoing reasons, we find that federal subject matter jurisdiction was, and is, lacking over this action.  Being without jurisdiction, the District Court could not, and we cannot, address the merits of Plaintiff's complaint.[8]  Accordingly, we REVERSE the District Court's decision and REMAND the case with instructions that the Judgment be VACATED and the case remanded to state court.  Defendants' motion for costs and fees is denied.

---

[8] *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331 (1986); *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 917 (6th Cir. 1986).