RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0233p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

GENTEK BUILDING PRODUCTS, INC.,
*Plaintiff-Appellant,*

STEEL PEEL LITIGATION TRUST, formerly known as
Sherwin-Williams Claims Trust,
*Plaintiff,*

*v.*

THE SHERWIN-WILLIAMS COMPANY,
*Defendant-Appellee.*

No. 06-3964

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00013—John R. Adams, District Judge.

Argued: April 25, 2007

Decided and Filed: June 20, 2007

Before: GUY, COLE, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Tracy S. Johnson, CALFEE, HALTER & GRISWOLD, Cleveland, Ohio, for Appellant. Robert H. Eddy, III, GALLAGHER, SHARP, FULTON & NORMAN, Cleveland, Ohio, for Appellee. **ON BRIEF:** Tracy S. Johnson, John J. Eklund, CALFEE, HALTER & GRISWOLD, Cleveland, Ohio, for Appellant. Robert H. Eddy, III, Timothy John Fitzgerald, Richard C.O. Rezie, GALLAGHER, SHARP, FULTON & NORMAN, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

R. GUY COLE, JR., Circuit Judge. Plaintiff-Appellant Gentek Building Products Inc. appeals a district court's grant of summary judgment in favor of Defendant-Appellee Sherwin-Williams Company. Gentek originally sued Sherwin-Williams in state court, alleging that Sherwin-Williams provided Gentek with a defective coating material for steel and aluminum siding that Gentek manufactures. Sherwin-Williams removed the suit to federal court, contending that Gentek's claims fell within the ambit of the Magnuson-Moss Act, 15 U.S.C. § 2301(1), which provides

1

remedies for certain warranty claims involving what it defines as "consumer products." As the case proceeded to summary judgment, Sherwin-Williams stated that the coatings at issue were not "consumer products," and the district court ultimately granted Sherwin-Williams summary judgment on Gentek's claims. Additionally, the court granted Sherwin-Williams summary judgment on its counterclaim for amounts owed for the coatings it provided. Gentek contends that the district court lacked subject-matter jurisdiction because the only basis for jurisdiction was Sherwin-Williams's allegedly false statement in its notice of removal that the suit involved a "consumer product." Alternatively, Gentek contends that the district court erred in calculating prejudgment interest awarded to Sherman-Williams on its counterclaim. We **AFFIRM** the district court's judgment.

## I. BACKGROUND

Gentek is a commercial manufacturer of steel and aluminum siding. Sherwin-Williams is a commercial manufacturer of paints and coating products. For some years, Gentek and its predecessors purchased certain coatings from Sherwin-Williams and applied them to steel and aluminum in the fabrication of its siding. Some of these coatings allegedly failed (by cracking, chipping, or peeling), subjecting Gentek to customer complaints and warranty claims. Gentek filed suit against Sherwin-Williams in Ohio state court, raising various claims, including breach of warranty, related to the allegedly failed coatings.

Sherwin-Williams removed the suit to federal court, contending that the Magnuson-Moss Warranty – Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301–12, provided federal jurisdiction. The Magnuson-Moss Act provides a federal remedy for certain warranty breaches related to what it defines as "consumer products." 15 U.S.C. § 2301(1). In its notice of removal, Sherwin-Williams stated that the coating at issue is a "consumer product" and that the Magnuson-Moss Act applied. Gentek did not challenge the removal. Gentek then amended its complaint to state expressly, in addition to the state-law claims, a claim under the Magnuson-Moss Act. Sherwin-Williams then counterclaimed for Gentek's alleged failure to pay for the disputed coatings.

The case proceeded to the summary-judgment stage. Sherwin-Williams first moved for partial summary judgment on Gentek's state-law claims and on Sherwin-Williams's counterclaim. The district court granted these motions, awarding $158,589.33 in prejudgment interest to Sherwin-Williams on its counterclaim for the $867,509.95 that Gentek failed to pay for the coating.

Sherwin-Williams then moved for summary judgment on the Magnuson-Moss-Act claim. Sherwin-Williams argued, among other things, that the district court's earlier rejection of Gentek's state warranty claims required rejection of Gentek's Magnuson-Moss-Act claims. Alternatively, Sherwin-Williams contended that Gentek failed to meet Magnuson-Moss requirements. For example, Sherwin-Williams stated (contrary to its earlier statement in its notice of removal) that the coating "is not a 'consumer product' as defined by Magnuson-Moss." (Joint Appendix ("JA") 146.) In response, Gentek argued that, because removal to federal court was based on Sherwin-Williams's earlier statement that the coating was a "consumer product," this new statement showed that removal was improper and that the district court lacked subject-matter jurisdiction (i.e., there was no Magnuson-Moss claim).

The district court granted Sherwin-Williams summary judgment, noting that its earlier ruling rejecting Gentek's state-law warranty claims also defeated Gentek's Magnuson-Moss claim. Further, the court rejected Gentek's argument regarding jurisdiction, explaining that subject-matter jurisdiction existed under Magnuson-Moss based on Gentek's amended complaint. The court explained that, although "Sherwin-Williams determined, after discovery, that the Act does not apply to this action," that determination "does not serve to divest [the court] of jurisdiction." (JA 178.)

Gentek appealed. Sherwin-Williams contended that Gentek is not the real party in interest and that this Court therefore lacks jurisdiction over the appeal. In December 2006, this Court rejected that argument, concluding that Gentek has standing. *Gentek Bldg. Prods. Inc. v. Sherwin-Williams Co.*, No. 06-3964, slip op. at 2 (6th Cir. Dec. 7, 2006) (order).

## II.  DISCUSSION

### A.     Subject-Matter Jurisdiction

Gentek contends that the district court lacked subject-matter jurisdiction. This Court reviews de novo a district court's exercise of subject-matter jurisdiction. *Green v. Ameritech Corp.*, 200 F.3d 967, 972 (6th Cir. 2000). To assess Gentek's contention, we begin with first principles of removal jurisdiction.

Defendants sued in state court generally may remove the suit to federal district court if the district court has original jurisdiction over the suit. 28 U.S.C. § 1441(a) ("Except as expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). Thus, state-court lawsuits involving federal questions are removable: "Any civil action of which the district courts have original jurisdiction found on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b).

To determine whether a claim arises under federal law, a court, under the well-pleaded-complaint rule, generally looks only to the plaintiff's complaint. *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 552 (6th Cir. 2005) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936) and *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908)). If the complaint relies only on state law, the district court generally lacks subject-matter jurisdiction, and the action is not removable. *Id.* This makes the plaintiff the master of the complaint; the plaintiff may simply avoid federal jurisdiction by relying exclusively on state law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987).

The Supreme Court has developed a limited exception to the well-pleaded-complaint rule: the complete-preemption doctrine. *Palkow*, 431 F.3d at 552. If Congress intends that a federal statute should completely preempt an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. *Id.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). The complaint may thus be removed to federal court and will be treated as alleging a federal cause of action, notwithstanding that, on its face, the plaintiff's complaint alleges only a state-law cause of action. *Id.*

But the complete-preemption doctrine is a limited exception to the well-pleaded-complaint rule. *Id.* at 553. The Supreme Court has "demonstrated a reluctance to extend application of the doctrine, largely limiting its finding of complete preemption to a handful of federal statutes," the most widely recognized of these being the Labor Management Relations Act, 29 U.S.C. § 185(a) (LMRA) and the Employee Retirement Income Security Act, 29 U.S.C. § 1144(a) (ERISA). *Id.* (citations omitted). As will be discussed below, the Magnuson-Moss Act does not completely preempt state law.

If a plaintiff believes that removal is improper because the complaint does not arise under federal law, the plaintiff may challenge removal, including by moving to remand the matter to state court. Yet the plaintiff may waive the right to bring this challenge if the jurisdictional defect is ultimately cured. A series of frequently cited decisions illustrate the contours of the law in this area.

In *Brough v. United Steelworkers of America*, 437 F.2d 748, 749 (1st Cir. 1971), the plaintiff employee brought state-law negligence claims in state court against the defendant, who removed the action to federal court, claiming that the duty it owed to the plaintiff was derived from federal law. The court denied the plaintiff's motion to remand to state court. *Id.* The plaintiff amended his complaint to add a federal claim, and the court later granted the defendant's motion for summary judgment. *Id.* at 749, 750. The First Circuit held that, although federal jurisdiction did not exist at the time of removal (making the removal improper), the amendment cured the jurisdictional defect and amounted to a waiver of any objection to the denial of remand: "Clearly plaintiff cannot be permitted to invoke the jurisdiction of the federal court, and then disclaim it when he loses." *Id.* at 750; *accord Tolton v. Am. Biodyne Inc.*, 48 F.3d 937, 941 n.2 (6th Cir. 1995) (citing *Brough* for the proposition that "[a]mending a complaint after removal cures a jurisdictional defect").

One year later, the Supreme Court faced a similar situation of improper removal in *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699 (1972); though, unlike *Brough*, there was no objection to the removal (i.e., a motion to remand to state court). The Court held that "an erroneous removal need not cause the destruction of a final judgment, if the requirements of federal subject-matter jurisdiction are met at the time the judgment is entered." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996) (discussing *Grubbs*, 405 U.S. at 700). Under those circumstances, "the validity of the removal procedure followed may not be raised for the first time on appeal." *Id.* (quoting *Grubbs*, 405 U.S. at 700) (emphasis removed); *accord Tolton*, 48 F.3d at 941 (noting that, under *Grubbs*, plaintiffs could not challenge removal after having summary judgment granted against them).

The Seventh Circuit followed these general principles in *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179 (7th Cir. 1984). There, the defendants removed the plaintiff's state-law complaint; the district court then denied the plaintiff's motion to remand; the plaintiff amended the complaint, adding a federal claim; and the court granted summary judgment to the defendants. *Id.* at 182. Although the Seventh Circuit determined that the plaintiff's complaint was not removable, it followed *Brough* and held that the plaintiff waived his right to challenge that removal once jurisdiction existed via the amended complaint. *Id.* at 185. "[A]fter [the plaintiff's] motion to remand was denied," Judge Posner explained, "he threw in the towel, as it were, and filed an amended complaint in federal court that included an unmistakable federal cause of action . . . ." *Id.* Accordingly, "once he decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there." *Id.*

The Supreme Court revisited these issues in 1996 in *Caterpillar Inc. v. Lewis*, reaffirming that a plaintiff who fails to object to removal waives any challenge to that removal once a jurisdictional defect is cured and a federal court enters judgment. 519 U.S. at 61. But the Court also held (perhaps contrary to broader statements in *Brough* and *Bernstein*) that a plaintiff who timely objects in that situation may still—at least under certain conditions—challenge the removal. *Id.* There, the defendant removed a state-court suit, purportedly based on diversity jurisdiction. *Id.* at 65. The plaintiff objected and moved to remand to state court; the district court denied this motion, and the case proceeded to a jury trial ending in a verdict for the defendant. *Id.* at 66. On appeal to this Court, we determined that diversity was not complete at the time of removal. *Id.* at 67. Accordingly, even though the nondiverse defendant was dismissed before judgment, we vacated the district court's judgment. *Id.*

The Supreme Court reversed. The Court first explained that although *Grubbs* instructs that a judgment can stand even when removal was improper, *Grubbs* was "not dispositive of the question whether a plaintiff, who timely objects to removal, may later successfully challenge an adverse judgment on the ground that the removal did not comply with statutory prescriptions." *Id.* at 73. Then, acknowledging that the plaintiff had preserved his objection to improper removal, the Court nonetheless held that the plaintiff's arguments "run up against an overriding consideration. Once

a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of *Erie R. Co. v. Tompkins . . .* , considerations of finality, efficiency, and economy become overwhelming." *Id.* at 75.  The Court also emphasized that, for the judgment to stand, jurisdiction must exist "at the end of the day and case." *Id.* at 76-77.  Because the jurisdictional defect (lack of diversity) was cured at the time of judgment, the Court held that we erred by vacating the judgment. *Id.* at 77.

Cases since *Caterpillar* show its limits: although the considerations of finality outweighed the plaintiff's objection to improper removal there, those considerations are not always weighty enough—even if there is a final judgment.  The Fifth Circuit addressed that situation in *Waste Control Specialists LLC v. Envirocare of Texas, Inc.*, 199 F.3d 781 (5th Cir. 2000).  There, the court held that a plaintiff's objection to improper removal based on purported federal-question jurisdiction preserved the objection (even though the plaintiff eventually amended its complaint to state a federal claim) despite that the court entered judgment against the plaintiff based on a Rule 12(b)(6) motion to dismiss.  *Id.* at 783.  The court explained that the *Caterpillar* Court's concerns about finality and economy were particularly focused on *diversity* cases—in which the federal court applies the state law exactly as a state court would—and arguably were not implicated where, as in *Waste Control*, a state court would treat the plaintiff's claim differently from the *federal question* that claim purportedly involved.  *Id.* at 786 n.2.  Additionally, the court explained that it was "greatly influenced because there was no trial on the merits," a notion that encompasses summary-judgment dismissal as well as a full bench or jury trial.  *Id.* at 786.  The court accordingly held that the plaintiff, despite amending its complaint to state a federal claim and then losing on a motion to dismiss, preserved its objection to the improper removal.  *Id.* at 786.  The court therefore vacated the district court's judgment for lack of subject-matter jurisdiction.  *Id.* at 788.

From these cases, the following general framework emerges where removal is improper but a final judgment issues with jurisdiction existing at that time: (1) if the plaintiff did not move to remand to state court, the judgment stands (*Grubbs*); (2) even if the plaintiff moved to remand, the judgment will stand so long as considerations of finality and economy are compelling (particularly where a diversity case proceeds to summary judgment or trial, as in *Caterpillar*); but (3) the judgment might not stand if the plaintiff moves to remand and those finality and economy considerations are less significant (such as in a federal-question case that is dismissed before summary judgment, as in *Waste Control*)—even if the plaintiff amended the complaint to state a federal claim.  This all assumes, of course that jurisdiction exists at the time of judgment; if not, the judgment must be vacated.  *Caterpillar*, 519 U.S. at 75–76 ("Despite a federal trial court's threshold denial of a motion to remand, if, at the end of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated." (citing Fed. R. Civ. P. 12(h)(3)).)

As discussed below, these principles reveal that the district court's judgment here should stand: (1) Gentek waived any challenge to improper removal, and (2) no jurisdictional defect existed at the time of judgment.  Because of Gentek's waiver, we do not consider whether the principles of finality and economy discussed in *Caterpillar* would otherwise suggest that the judgment not stand.

      1.      *Gentek Waived any Challenge to Removal by Failing to Move for Remand*

Gentek filed suit in state court raising only state-law claims.  Sherwin-Williams then removed the case to federal court, contending that Gentek's state warranty claims were really Magnuson-Moss claims.  In particular, Sherwin-Williams stated that the coating amounted to a "consumer product" under the Magnuson-Moss Act.  Instead of challenging the removal by moving to remand to state court, Gentek simply amended its complaint to explicitly state the Magnuson-Moss claims.

Sherwin-Williams says Gentek accordingly waived any challenge it has to jurisdiction at the time of removal, now that there is a final judgment. Sherwin-Williams cites a number of the cases discussed above for the proposition that a plaintiff who does not move to remand a case after removal waives any objection to removal if jurisdiction exists at the time of judgment. But none of those cases involve a plaintiff who claims, as Gentek does here, that the *defendant's false statement* was the sole basis for (i) removal and, in turn, (ii) the amendment of the complaint that later provided federal jurisdiction. It makes sense to bar a plaintiff from challenging removal when the plaintiff voluntarily accedes to it; but it is less clear that, assuming the defendant's statement is fraudulent, a plaintiff is stuck with (purportedly federal) pleadings based on the defendant's fraud. In short, Gentek would ask, how could we expect it to object to a removal built on a defendant's false statement when Gentek did not know the statement was false?

These questions matter, however, only if we presume (as the parties appear to) that Sherwin-Williams's alleged misrepresentation regarding "consumer products" *forced* Gentek into federal court. But that is simply not the case. Gentek remained—regardless of Sherwin-Williams's statements—the master of its complaint. Sherwin-Williams could have lied about the "consumer product" and made plenty of additional lies suggesting that Gentek had other federal claims, but Gentek remained free to allege solely state claims in state court. Even if the coatings were "consumer products," had Gentek moved to remand instead of amending its complaint, the district court would have granted the motion. First, "it [would not] appear[] that some substantial, disputed question of federal law [was] a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983). Additionally, although Gentek's state-law claims might be similar to claims under the Magnuson-Moss Act, that Act, unlike the LRMA and ERISA, does not completely preempt state law. *See Automobile Importers of Am. Inc. v. Minnesota*, 871 F.2d 717, 781 (8th Cir. 1989); *Chrysler Corp. v. Texas Motor Vehicle Comm.*, 755 F.2d 1192, 1206 (5th Cir. 1985); *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1141 (7th Cir. 1979); *but see Wolf v. Ford Motor Co.*, 829 F.2d 1277 (4th Cir. 1987) (holding that the Magnuson-Moss Act preempts state warranty claims). Accordingly, a district court would grant a plaintiff's motion to remand a case that raises solely state claims when the defendant removes based on the Magnuson-Moss Act. *See, e.g., Woods v. Nissan North Am.*, No. 04-2898, 2005 U.S. Dist. LEXIS 7522, at *6–7 (D. Md. April 29, 2005) (granting plaintiff's motion to remand where defendants removed based on Magnuson-Moss Act and plaintiff's complaint raised no federal claims and complaint was not "artful pleading" to avoid complete preemption); *A.O. Smith Corp. v. Am. Alternative Ins. Co.*, No. 99-3347, 2000 U.S. Dist. LEXIS 467, at *15 (E.D. La. Jan. 13, 2000) (granting plaintiffs' motion to remand where defendants removed based on Magnuson-Moss Act and plaintiffs elected "to proceed in state court exclusively relying on state law," and noting that "Magnuson-Moss Warranty Act claims do not fall into th[e] category" of claims that are completely preempted); *Hinton v. Daimler Chrysler Servs. North Am. LLC*, No. 05-0850, 2006 U.S. Dist. LEXIS 10453, at *4 (W.D. Mo. Feb. 23, 2006) (granting plaintiff's motion to remand after defendant removed based on Magnuson-Moss Act because plaintiff's complaint merely referred to the Magnuson-Moss Act as providing a standard of care for state claims); *Greene v. Gen. Motors Corp.*, 261 F. Supp. 2d 414 (W.D.N.C. 2003) (granting plaintiff's motion to remand after defendant removed based on Magnuson-Moss Act because plaintiff's complaint merely referred to Magnuson-Moss standards as further evidence of state-law violations). Thus, this Court would face a more difficult situation if a defendant made a false statement related to claims that would be completely preempted—e.g., a statement that would bring the claims within the ambit of the LRMA—thus duping the plaintiff to accede to (what appeared to be) the federal court's *exclusive* jurisdiction. In that case, the plaintiff might have a strong argument to say it did not waive a challenge to jurisdiction, because it would never have had a basis—presuming it reasonably believed the defendant's statement—to go to state court.

Here, however, the removal was improper—regardless of anything Sherwin-Williams stated—and Gentek simply could have shown the district court that was the case and been back in state court. Instead, Gentek voluntarily amended its complaint to explicitly state federal claims under the Magnuson-Moss Act. Thus, Gentek didn't just "throw in the towel" in a fight against removal; it never even entered the ring. It has therefore waived its argument that removal was improper. The only question, then, is whether the district court had jurisdiction at the time of judgment; if so, the judgment must stand. *See Grubbs*, 405 U.S. 699.

2.      *Jurisdiction Existed at the Time of Judgment*

Although Gentek waived its argument that removal was improper, this Court still must verify that jurisdiction existed at the time of judgment. As the case proceeded to summary judgment, Sherwin-Williams stated, contrary to its notice of removal, that the coating was not a "consumer product" under the Magnuson-Moss Act. Sherwin-Williams contends, however, that assessing jurisdiction is a simple inquiry—a quick look at the amended complaint shows that Gentek stated, explicitly, a Magnuson-Moss claim. Thus, Sherwin-Williams says, jurisdiction exists based on the allegations alone (regardless of their truth). Gentek, on the other hand, contends that, because the allegations regarding the "consumer product" were ultimately not true, there never was jurisdiction.

Sherwin-Williams's view that courts assess federal jurisdiction based solely on allegations in the complaint is not without exception. In Sherwin-Williams's world, a defendant could lie about a fact that creates a federal claim, a plaintiff could file a complaint based on that fact, and, *ipso facto*, federal jurisdiction would exist. Under this reasoning, a plaintiff could come up with its own lie to create federal jurisdiction and then file complaints in federal court, facing no jurisdictional problems.

Though the parties do not explicitly say so, what really is at issue here is a jurisdictional challenge to the allegations in the complaint. Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading. *Id.* When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* If those allegations establish federal claims, jurisdiction exists.

Where, on the other hand, there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations. *Id.* When a factual attack, also known as a "speaking motion," raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist. *Id.* In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts. *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) and *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

Questions of removal similarly may involve facial and factual inquiries. When ruling on a motion to remand, a court generally looks to the plaintiff's complaint, as it is stated at the time of removal, and the defendant's notice of removal. *See, e.g., Miller v. Grgurich*, 763 F.2d 372 (9th Cir. 1985). But federal courts may look beyond the pleadings to assess challenged facts; this may occur, for example, when the defendant alleges that the plaintiff fraudulently joined non-diverse defendants to destroy diversity jurisdiction. 16 Moore's Federal Practice § 107.41[1][e][ii]. In that context, the court may employ a summary-judgment-like procedure to examine affidavits and deposition

testimony for evidence of fraud.  *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311–312 (5th Cir. 2002)).

But a district court engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim. *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997).  If, on the other hand, an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should "*find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim."  *Id.* (quoting *Williamson*, 645 F.2d at 415–16) (emphasis added)).  This provides a "greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place greater restrictions on the district court's discretion . . . ."  *Id.* (quoting *Williamson*, 645 F.2d at 415–16).  "As a general rule a claim cannot be dismissed for lack of subject-matter jurisdiction because of the absence of a federal cause of action."  *Id.* (quoting *Williamson*, 645 F.2d at 415–16).  "The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial."  *Id.* (quoting *Williamson*, 645 F.2d at 415–16).  We follow these principles.  *See Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 444 (6th Cir. 2006) (quoting *Williamson* and explaining that when the basis of federal jurisdiction is intertwined with the plaintiff's cause of action, the court should assume jurisdiction over the case and decide the case on the merits); *but cf. id.* at 452 (Cook, J., dissenting) (noting that if the disputed question determines whether the plaintiff is a proper party, such as whether the plaintiff is a "participant" under ERISA,  the district court should address first that jurisdictional question).

As mentioned, Sherwin-Williams contends that we should look to nothing more than the allegations in the amended complaint, assume their truth, and conclude jurisdiction exits.  But this is the process for a facial attack; the question here is factual.  Nobody disputes that the allegations in Gentek's amended complaint, referring to the coating as a "consumer product" under the Magnuson-Moss Act, raise a federal claim on their face.  The question is whether the coating really is, factually, a "consumer product."

Although this case presents the unusual situation of the plaintiff, Gentek, essentially raising a factual attack on its own complaint, this posture does not alter that any factual attack here—however, and by whomever, raised—is intertwined with the merits of Gentek's claim.  Accordingly, the district court had jurisdiction.  To establish Magnuson-Moss claim, a plaintiff must show that the item at issue was a "consumer product."  This disputed fact therefore goes to the merits.  *See Miller v. Willow Creek Homes, Inc.*, 249 F.3d 629, 632 (7th Cir. 2001) (affirming district court's grant of summary judgment, which was based on conclusion that allegedly defective mobile home was not a "consumer product" under Magnuson-Moss Act); *cf. Moore*, 458 F.3d at 445 (noting that factual question regarding whether plaintiff was an "employee" was intertwined with the merits of his ERISA claim, so federal courts had jurisdiction); *German Free Bavaria v. Toyobo Co.* No. 1:06-CV-407, 2007 U.S. Dist. LEXIS 19828, at *8 & n.3 (D. Mich. Mar. 20, 2007) (noting that defendant's argument that federal court lacked jurisdiction over plaintiffs' amended complaint, which added a Magnuson-Moss claim, "is best examined in the context of a motion to dismiss for failure to state a claim" because defendant argued that the claim was without merit).

The hypothetical situation Gentek raises in its reply brief illustrates how this principle operates.  In Gentek's example, a plaintiff sues a federal employee in state court for negligence.  The Attorney General then certifies that the federal employee was acting within the scope of his or her employment, removing the case to federal court and substituting the United States as a defendant under the Federal Tort Claims Act.  "To parallel Sherwin-Williams's tactics in this matter," Gentek explains, "the Attorney General would then later move for summary judgment on the basis that the

employee was never a federal employee." "Having already conceded that the employee was a federal employee in order to get into federal court," the Attorney General's move, Gentek says, "would be absurd and sanctionable." Gentek may be right, but the relevant question is whether the federal court has jurisdiction in that situation.

It likely would. If the employee were not a federal employee, the claim would fail on the merits. Because this factual issue regarding subject-matter jurisdiction is intertwined with the merits, the factual attack to jurisdiction would instead be treated as an attack on the merits, with the district court having jurisdiction. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (vacating district court's dismissal for lack of jurisdiction where plaintiff brought FTCA claim and there was a factual question regarding whether the defendant was acting within the scope of his employment—a question that "will resolve both the question of subject matter jurisdiction and a necessary element of the tort claim"); *Simpson v. Holder*, 184 F. App'x 904 (11th Cir. 2006) (noting that whether defendants were "government employees . . . affects both subject matter jurisdiction under the FTCA and the merits of the FTCA claim, so district court had to comply with Rule 56 when ruling on defendant's motion to dismiss for lack of subject-matter jurisdiction). Similarly, the district court had jurisdiction over Gentek's Magnuson-Moss claim, despite the debate over the status of the coating as a "consumer product," because that question goes to the merits.

This is not to say a district court can never dismiss a federal claim for lack of subject-matter jurisdiction whenever a decision on subject-matter jurisdiction also implicates the substantive merits of the claim. *Lawrence*, 919 F.2d at 1530 n.7. Where the plaintiff's claims are "clearly immaterial, made solely for the purpose of obtaining jurisdiction or are wholly unsubstantiated and frivolous . . . , the court should dismiss the claim." *Id.* (internal citation and quotation marks omitted; also citing *Bell v. Hood*, 327 U.S. 678 (1946)). And although it is less clear what a district court should do if, as here, the *defendant* allegedly makes a "wholly unsubstantiated" claim on which the plaintiff bases federal jurisdiction, Gentek makes no argument—other than Sherwin-Williams's later statement to the contrary—that Sherwin-Williams's original statement was without any basis in fact. In other words, Gentek does not argue why the coating really is not a "consumer product"—let alone whether a contrary argument would be "wholly unsubstantiated." Moreover, as discussed above, if Gentek had any qualms about accepting Sherwin-Williams's statement that the coating was a "consumer product" and that Magnuson-Moss would therefore govern, Gentek could have simply moved to remand the case to state court.

This is also not to say that a party can make contradictory statements without consequence. Costs and attorney's fees are available if a party attempts removal absent an objectively reasonable basis. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005) (holding that, under 28 U.S.C. § 1447(c), "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal"). Removal absent an objectively reasonable basis may also subject an attorney to the imposition of sanctions, and a good-faith belief in the truth of the jurisdictional facts alleged to support removal is insufficient without reasonable inquiry to support the objective reasonableness of that belief. *See Rockwell Int'l Credit Corp. v. U.S. Aircraft Ins. Group.*, 823 F.2d 302, 304–05 (9th Cir. 1987) (failure to determine accurately citizenship of removing party as grounds for sanctions), *overruled on other grounds by Partington v. Gedan*, 923 F.3d 686, 688 (9th Cir. 1991). Additionally, Rule 11 authorizes a court to impose sanctions if papers are filed containing statements that are not well-grounded in fact and warranted by law. 16 Moore's Federal Practice § 107.30[2][a][ii][A] (citing 28 U.S.C. § 1446, Commentary on 1988 Revision of Section 1446). But Gentek did not move for sanctions in the district court and does not explain why Sherman-Williams's first statement (admittedly contradicted later) lacked an objectively unreasonable basis. Gentek is therefore not entitled to sanctions.

## B.    Prejudgment Interest

Assuming jurisdiction exists, Gentek argues in the alternative that the district court erred in awarding prejudgment interest to Sherwin-Williams on its state-law counterclaim.  The district court granted summary judgment to Sherman-Williams on its counterclaim, concluding that Gentek owed Sherwin-Williams $867,509.95, plus interest, for 72 outstanding invoices.

Sherwin-Williams argued that the prejudgment interest should be based on its internal measure of its cost of capital.  This, it said, would compensate it for amounts it would have earned had Gentek paid the invoices in a timely manner.  This would have resulted in a prejudgment-interest award of $248,412.39.

Gentek argued that federal law, as set forth in 28 U.S.C. § 1961, should govern the award. This statute provides an interest rate based on the one-year constant-maturity treasury yield as published by the Board of Governors of the Federal Reserve system.  That would have resulted in a prejudgment-interest award of $54,184.56.

The district court concluded that New Jersey law, which governed the counterclaim, also governed the award of prejudgment interest.  The court explained that New Jersey courts rely on New Jersey Court Rule 4:42-11 "as a benchmark to determine prejudgment interest where higher rates are not supported by the evidence." (JA 182 (citing *DialAmerica Marketing, Inc. v. KeySpan Energy Corp.*, 865 A.2d 728, 733 (N.J. Super. App. Div. 2005)).)  Rule 4:42-11 provides for an interest rate established by the New Jersey Cash Management Fund, plus 2% for judgments exceeding $15,000, N.J. Ct. R. 6:1-2.  Based on these rates, the district court concluded that the prejudgment-interest award would be $158,589.33.  The court concluded that this award would "compensate Sherwin-Williams for the loss of the use of the money in this matter." (JA 183.) Further, it explained that "the higher rates requested by Sherwin-Williams are not supported by the evidence." (*Id.*)

This Court reviews for an abuse of discretion a district court's prejudgment-interest award. *Anderson v. Whittaker Corp.*, 894 F.2d 804, 809 (6th Cir. 1990).  An abuse of discretion arises when there is a "definite and firm conviction that the trial court committed a clear error of judgment.  A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard."  *United States ex. rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 450 (6th Cir. 2005).

Gentek argues again on appeal that federal, not state, law governs the prejudgment-interest award because the district court exercised federal-question jurisdiction in this case.  But "[w]here state law claims come before a federal court on supplemental jurisdiction," as they did here, "the award of prejudgment interest rests on state law."  *Mills v. River Terminal Ry. Co.*, 276 F.3d 222, 228 (6th Cir. 2002) (citing *Stallworth v. City of Cleveland*, 893 F.2d 830, 834–35 (6th Cir. 1990)); *accord Mallis v. Bankers Trust Co.*, 717 F.2d 683, 692 n.13 (2d Cir. 1983) ("Because the applicability of state law depends on the nature of the issue before the federal court and not on the basis for its jurisdiction, state law applies to questions of prejudgment interest on . . . pendent [state-law] claims.") (citations omitted).  Gentek relies on *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618–619 (6th Cir. 1998), to show federal law governs here, but that case did not involve pendent state-law claims; the court there simply dealt with prejudgment interest on a federal claim under ERISA.  Accordingly, the district court properly looked to New Jersey law to determine prejudgment interest.

Gentek additionally argues that the prejudgment interest award is impermissibly punitive, because it exceeded Sherwin-Williams's true borrowing costs.  But because prejudgment interest

in New Jersey is intended to compensate a party not simply for borrowing costs, but for what that party "presumably would have earned had payment not been delayed," *Kotzian v. Barr*, 408 A.2d 131, 133 (N.J. 1979), the district court was within its discretion to award interest based on New Jersey Rule 4:42-11(a), which provides an appropriate starting point absent "unusual circumstances," *DialAmerica Marketing*, 865 A.2d at 733, and which resulted in a prejudgment-interest award of $158,589.33 (about $90,000 less than what Sherwin-Williams proffered as its internal cost of capital).  We therefore do not disturb this award on appeal.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.