**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0051n.06

Case No. 19-1206

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 24, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NATALIE C. QANDAH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JOHOR CORPORATION and YB DATO | ) | MICHIGAN |
| KAMARUZZAMAN BIN ABU KASSIM, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

---

BEFORE: COLE, Chief Judge; SILER and MURPHY, Circuit Judges.

SILER, Circuit Judge. Natalie Qandah contends that she has been the victim of an intricate corporate shell game that has allowed Johor Corporation (JCorp) and its CEO, YB Dato Kamaruzzaman Bin Abu Kassim, to escape liability for the harm that they and their agents caused her. After a limited discovery period, the district court granted Defendants' motion to dismiss, finding that JCorp was entitled to immunity under the Foreign Sovereign Immunities Act (FSIA) and Kassim was entitled to immunity as well. Notably, the district court held that Qandah failed to prove that the corporate malfeasance at issue was attributable to JCorp and Kassim.

However, there is a flaw in the district court's immunity analysis. Under the FSIA, there is a unique burden-shifting framework. Initially, the burden of proof is on the party seeking immunity to establish that it is a foreign state. *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir.

2009). If that party succeeds, the burden of production shifts to the party opposing immunity to establish that one of the FSIA exceptions apply. *Id.* Nevertheless, the burden of persuasion remains with the party seeking immunity throughout the process. *Id.* The district court erred when it placed the burden of persuasion, not just the burden of production, on Qandah to prove that one of the FSIA exceptions applied. Therefore, we **REVERSE** the district court's grant of immunity and **REMAND** the case so that the district court may reweigh the evidence under the proper legal standard.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff Qandah is an attorney licensed in the State of Michigan. Defendant JCorp is a business entity that was created by the legislature of the state of Johor, Malaysia. JCorp began as a corporation by managing palm oil estates and expanded into sectors including specialist healthcare, foods and restaurants services, property development, and hospitality. Defendant Kassim is a resident of Malaysia and president and CEO of JCorp.

This dispute arose out of Qandah's employment with WLC SA (WLC), a nonparty. The Global Coalition for Efficient Logistics (GCEL) advertised for an in-house attorney for either its Michigan, or Washington, D.C., office. Qandah applied for the position; was interviewed by various people, including Greg Bird and Samuel Salloum;[1] and was eventually offered the position of manager of legal and associate general counsel of GCEL in the Michigan office. In that role, she would report to two other attorneys employed by GCEL, Jennifer Chloe Groves and Kathlyn Scott. However, the signatory party to Qandah's employment contract was WLC, not GCEL.[2]

---

[1] According to Qandah, Salloum was the co-chairman of GCEL. It is unclear what Bird's role was, but in an email, he identified himself as "Deputy Secretary General."

[2] There is significant disagreement among the parties regarding the business relationships between the various entities involved in this case. According to Defendants, during Qandah's employment with WLC, her employer was a Swiss-based subsidiary of the Ireland-based World

Qandah asserts that at the time she accepted the job, Bird and Salloum promised that her salary would double within six months and that she would immediately receive vested equity in WLC.[3]

Qandah officially commenced her employment in August 2013. She alleges that while with WLC, she performed legal work for GCEL, WLC, World Logistics Council, WLC Americas, LLC, Asia Logistics Council, the Asia Economic Development Fund, JCorp, and Kassim, among others. Qandah also asserts that during her employment with WLC, Bird and Salloum subjected her to abusive conduct. Specifically, Qandah, a Christian, avers that Salloum refused to allow her to take time off for Christian holidays, despite his willingness to allow others to miss work for Islamic holidays. Further, according to Qandah, Salloum's brother, while temporarily at the Dearborn office, attempted to convert her by advising her of the inferiority of Christianity to Islam. Qandah states that she was terminated in May 2014, only two weeks after refusing to convert to Islam. After her termination, Qandah contends that Salloum withheld her last paycheck for four to six months because she is a woman and he enjoyed having power over her. Additionally, she charges that Bird and Salloum subjected her to other verbal threats and abusive treatment throughout her employment with WLC on the basis of her gender and Christian faith.

Following her firing, Qandah informed JCorp and Kassim, among others, that she planned to file a lawsuit in the United States. Subsequently, Qandah alleges that JCorp, through its agents, hired an attorney to file a grievance against her with the Michigan Attorney Grievance Commission (MAGC). After the MAGC declined to investigate the matter, the Michigan Supreme

---

Logistics Council Ltd., which owns 20% of Asia Logistics Council (ALC). The other 80% of ALC was owned by Johor Logistics SDN BHD. JCorp owns 49% of Johor Logistics, and the other 51% is owned by Johor Paper SDN BHD, which is a wholly owned subsidiary of JCorp. Additionally, ALC is one of the four regional councils of GCEL, a Swiss-based nonprofit public/private partnership. According to Qandah and Steve Szirmai, the former director of finance for GCEL, all of the above-referenced organizations are owned and controlled by JCorp.

[3] Qandah states that WLC failed to deliver on each of these promises.

Court affirmed the MAGC's decision not to investigate, but the appeal to the Michigan Supreme Court made the grievance a public record.

Qandah subsequently filed a lawsuit against JCorp and Kassim in the United States District Court for the Eastern District of Michigan, asserting fraud in the inducement, employment discrimination under federal and state law, and intentional infliction of emotional distress (IIED).[4] Following a long and contentious period of jurisdictional discovery, the district court granted Defendants' motion to dismiss. It held that JCorp was a foreign state under the FSIA and none of the exceptions to the FSIA applied; thus, JCorp was entitled to FSIA immunity. Further, it held that because the lawsuit sought liability against Kassim in his official capacity, it was an alternative means of holding JCorp liable, so Kassim was also entitled to immunity. Accordingly, the district court entered judgment in favor of JCorp and Kassim and dismissed the case.

## STANDARD OF REVIEW

"A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) involves either a facial attack or a factual attack." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). When reviewing a facial attack, a district court must take the allegations in the complaint as true. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). However, when a Rule 12(b)(1) motion attacks a complaint's factual predicate, the court does not presume the plaintiff's factual allegations to be true. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015). Instead, we accept the district court's findings of fact unless they are clearly erroneous and review de novo its legal conclusions regarding those facts. *Glob. Tech.*, 807 F.3d at 810.

---

[4] According to Qandah's original complaint, she also pursued claims against WLC in a Swiss proceeding, per the terms of her employment agreement. Qandah notes that the proceeding has concluded, but the outcome is not clear from her pleadings.

**DISCUSSION**

As a threshold matter, we must resolve the parties' dispute regarding whether Defendants' motion to dismiss was a facial attack or a factual attack on the complaint. The district court explicitly stated that it was analyzing Defendants' motion to dismiss as a factual attack. Consequently, the district court was required to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist," and had "wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Gentek Bldg. Prods.*, 491 F.3d at 330. In the case before us, the district court weighed the evidence and held that both JCorp and Kassim were entitled to immunity. On appeal, Qandah challenges the district court's determinations that JCorp is a foreign state entitled to immunity under the FSIA and that Kassim is also entitled to immunity.

**I. FSIA Immunity**

"Foreign states are generally immune from suit in United States courts." *Triple A Int'l, Inc. v. Democratic Republic of Congo*, 721 F.3d 415, 416 (6th Cir. 2013). If it applies, the FSIA "is the sole basis for obtaining jurisdiction over a foreign state in federal court." *Samantar v. Yousuf*, 560 U.S. 305, 314 (2010) (internal quotation marks omitted). "Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies." *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007). *See also* 28 U.S.C. § 1604. Thus, the FSIA creates a general grant of immunity, subject to the enumerated exceptions. *Glob. Tech.*, 807 F.3d at 810.

Additionally, under the FSIA, there is a unique burden-shifting framework for the immunity inquiry. The initial burden is on the party claiming FSIA immunity to establish a prima facie case that it satisfies the FSIA's definition of a foreign state. *O'Bryan*, 556 F.3d at 376. If

that party establishes a prime facie case, the burden of production shifts to the party opposing FSIA immunity to show an exception applies. *Id.* However, "[t]he party claiming immunity under [the] FSIA retains the burden of persuasion throughout this process." *Id.*

Qandah first asserts that JCorp failed to establish a prima facie case that it satisfies the FSIA's definition of a foreign state. Next, Qandah contends that even if JCorp is a foreign state under the FSIA, exceptions apply to bar immunity. Qandah identifies both the commercial and tortious activity exceptions as applicable in this case.

### a.  Foreign State

The relevant statutory provision that confers jurisdiction to a district court over a foreign state is 28 U.S.C. § 1330.

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a). A "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." *Id.* § 1603(a). Section 1603(b) then defines an "agency or instrumentality of a foreign state" as any entity that is (1) "a separate legal person, corporate or otherwise"; (2) "which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof"; and (3) "which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country." *Id.* § 1603(b).

Only the second element is disputed. The district court found that JCorp is an organ of the state of Johor, Malaysia. Qandah contests that finding, arguing that JCorp must prove that it is

wholly- or majority-owned by Malaysia. However, Qandah appears to be conflating the ownership prong with the organ prong; these are two separate inquiries. *See, e.g.*, *EOTT Energy Operating Ltd. P'ship v. Winterthur Swiss Ins. Co.*, 257 F.3d 992, 997 (9th Cir. 2001) ("Even though a majority of Icarom's shares are not directly held by Ireland, it is still possible for it to be an 'organ' of a foreign state as defined by § 1603(b)(2)."); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 846 (5th Cir. 2000) ("Most cases have determined § 1603(b)(2) agency/instrumentality status using the 'ownership', rather than the 'organ', prong.").

In considering whether an entity is an "organ of a foreign state," various courts have applied a list of factors. *See Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 259 (5th Cir. 2016) (per curiam); *Filler v. Hanvit Bank*, 378 F.3d 213, 217 (2d Cir. 2004); *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 209 (3d Cir. 2003); *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 640 (9th Cir. 2003). The factors most commonly used are: (1) "whether the foreign state created the entity for a national purpose"; (2) "whether the foreign state actively supervises the entity"; (3) "whether the foreign state requires the hiring of public employees and pays their salaries"; (4) "whether the entity holds exclusive rights to some right in the [foreign] country"; and (5) "how the entity is treated under foreign state law." *Filler*, 378 F.3d at 217 (quoting *Kelly*, 213 F.3d at 846-47). *See also Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 655 (9th Cir. 1996). Nevertheless, while these factors aid in the determination of the organ prong, there is no clear test. *Janvey*, 840 F.3d at 259. And Congress intended the terms "organ" and "agency or instrumentality" to be read broadly. *EIE Guam Corp.*, 322 F.3d at 640. In examining the organ prong, the district court found that JCorp was created by a legislative enactment of the state of Johor, employees of JCorp are public servants, JCorp performs a governmental function, and JCorp's finances are overseen and approved by the state of Johor. The

evidence in the record supports the district court's findings. First, the legislature of the state of Johor created JCorp in May 1968. The legislative enactment tasked JCorp with the duty of promoting, facilitating, stimulating, and undertaking land development in the state of Johor for the purposes of agricultural, residential, industrial, mining, and commercial development. Further, JCorp's board is comprised of government officials and officials appointed by the ruler of Malaysia, all JCorp's employees are deemed to be public servants, and the Malaysian government retained control over JCorp's ability to invest and borrow money. Consequently, we affirm the district court's holding that JCorp is an organ of a foreign state under the FSIA.

        b.        *Exceptions to the FSIA*

According to our precedents, with JCorp establishing that it is a foreign state for the purposes of the FSIA, the burden of production shifts to Qandah to establish that one of the FSIA exceptions applies to defeat immunity. *See, e.g.*, *O'Bryan*, 556 F.3d at 376. Qandah identifies two exceptions that apply here: (1) the commercial activity exception and (2) the tortious activity exception. There are three potential avenues for the commercial activity exception to apply:

> [A foreign state is not immune from suit when it] is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). "Commercial activity" means "either a regular course of commercial conduct or a particular commercial transaction or act." *Id.* § 1603(d). The general rule is that "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). Significantly, though, the commercial activity relied upon by the plaintiff for jurisdictional purposes must also be the activity

upon which the lawsuit is based; that is, there must be a connection between that activity and the act complained of in the suit. *O'Bryan*, 556 F.3d at 378 (internal citation and quotation marks omitted).

> As for the tortious activity exception, it applies where:
>
> there has been a tortious act (1) "occurring in the United States"; (2) "caused by [a] tortious act or omission"; (3) where the alleged acts or omissions were those of a "foreign state or of any official or employee of that foreign state"; and (4) those acts or omissions were done within the scope of tortfeasor's employment.

*Id.* at 380-81 (quoting 28 U.S.C. § 1605(a)(5)). We have interpreted this requirement as mandating that the entire tort occur in the United States. *Id.* at 381 ("[I]t seems most in keeping with both Supreme Court precedent and the purposes of the FSIA to grant subject matter jurisdiction under the tortious activity exception only to torts which were entirely committed within the United States.").

Qandah's theory of the case is that JCorp controlled her direct employer, WLC; her alleged indirect employers; and the people who engaged in the conduct at issue in the lawsuit, Bird and Salloum. She attempts to impute Bird's and Salloum's conduct to JCorp by arguing that they were its agents. Qandah's most consequential pieces of evidence in support of her assertions are her own affidavit, an affidavit from Steve Szirmai, wire transfers amongst a number of business entities, a letter from Kassim to Salloum, and an email from Kassim to Bird. Notably, Steve Szirmai, the former director of finance for GCEL, corroborates Qandah's claims that JCorp owned, operated, and controlled WLC and GCEL, that Kassim directed the actions of Bird and Salloum, and that based on the financial records he reviewed in his role as director of finance, the documents purporting to show separation between WLC and JCorp are fictional.[5] There is also circumstantial

---

[5] Qandah also argues that the district court failed to consider Szirmai's affidavit because it did not discuss it in its order dismissing her case. Qandah requests that we remand the case to the

evidence supporting Qandah's claims. For example, the wire transfers show $7,500,000 being directly transferred from JCorp to WLC between 2010 and 2011.

The district court held that the commercial and tortious activity exceptions do not apply because Qandah failed to prove a direct link between JCorp and Bird, Salloum, and WLC. Specifically, the district court rejected Qandah's evidence because it found it to be "as consistent with a collaborative business relationship . . . as with an agency relationship." However, the district court's analysis is troubling. It appears that the district court erred by placing both the burden of production and persuasion on Qandah. This is significant because Qandah only had the burden of production; JCorp had the burden of persuasion. *See id.* at 376. Consider the district court's analysis that Qandah's evidence was as consistent with a business relationship as with an agency relationship. It was not Qandah's burden to definitively prove an agency relationship; she did not have the burden of persuasion. *See generally Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 274 (1994) ("In the two decades after *Hill,* our opinions consistently distinguished between burden of proof, which we defined as burden of persuasion, and an alternative concept, which we increasingly referred to as the burden of production or the burden of going forward with the evidence."). If Qandah produced sufficient evidence to satisfy her burden of production, it was JCorp's burden to then prove by a preponderance of the evidence that neither of the two exceptions applies. Accordingly, without taking any view of the evidence as it relates to the exceptions to immunity, we reverse the district

---

district court and instruct it to consider all her evidence. However, "[t]he district court was not obliged to recite and analyze individually each and every piece of evidence presented by the parties." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1353 (11th Cir. 2005). While the district court did not explicitly discuss the Szirmai affidavit, it did note that it had "review[ed] the briefing," of which the Szirmai affidavit was part. There is no indication that it failed to consider the Szirmai affidavit.

court's grant of immunity to JCorp and remand the case to allow the district court to reweigh the evidence under the proper legal standard and determine if the parties have met their respective burdens.

## II.    Kassim's Immunity

We must also consider whether Kassim is entitled to immunity, as the district court held. Immunity for foreign officials is generally not analyzed under the FSIA. *Samantar*, 560 U.S. at 324-25.    Instead, it is typically governed by common-law principles of foreign sovereign immunity. *Id.* However, the Supreme Court has noted that some actions against foreign officials in their official capacity should be treated as actions against the foreign state itself because the state is the real party in interest. *Id.* at 325; *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is *not* a suit against the official personally, for the real party in interest is the entity" (citation omitted)).

The district court held that Qandah's claims against Kassim are really claims against JCorp itself.  Thus, because it held that JCorp was immune, it held that Kassim too was immune.  Since we reverse the district court's grant of immunity to JCorp, we must also reverse its grant of immunity to Kassim.[6]

---

[6] Defendants also assert that we could affirm the district court's dismissal of the case against them on the basis of personal jurisdiction.  However, Qandah's theory for personal jurisdiction is based on the same rationale as her theory regarding the FSIA exceptions. Consequently, we leave the issue to the district court for consideration in the first instance on remand, if necessary after its immunity determination.

**CONCLUSION**

Because the district court placed the burden of persuasion on the wrong party, we **REVERSE** its order dismissing the case and **REMAND** for further proceedings consistent with this opinion.