*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0286P (6th Cir.)
File Name: 04a0286p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JAMES L. HOWARD,
    *Plaintiff-Appellant,*

*v.*

WILLIAM C. WHITBECK, Chief
Judge of the Michigan Court
of Appeals; MAURA D.
CORRIGAN, Chief Justice of
the Michigan Supreme Court,
    *Defendants-Appellees.*

No. 03-1396

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 02-00093—Wendell A. Miles, District Judge.

Argued: June 11, 2004

Decided and Filed: August 31, 2004

Before: SILER, MOORE, and BALDOCK, Circuit
Judges.[*]

---

[*] The Honorable Bobby R. Baldock, Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

## COUNSEL

**ARGUED:** Sarah M. Riley, WARNER, NORCROSS & JUDD, Grand Rapids, Michigan, for Appellant. Kevin R. Himebaugh, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Sarah M. Riley, WARNER, NORCROSS & JUDD, Grand Rapids, Michigan, for Appellant. Kevin R. Himebaugh, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

## OPINION

KAREN NELSON MOORE, Circuit Judge. Michigan prisoner James L. Howard ("Howard") appeals from the district court's dismissal of his § 1983 suit for lack of subject matter jurisdiction on the basis of the *Rooker-Feldman* doctrine. Howard had filed suit against William C. Whitbeck ("Whitbeck"), Chief Judge of the Michigan Court of Appeals, and Maura D. Corrigan ("Corrigan"), Chief Justice of the Michigan Supreme Court, alleging that he had been denied access to the courts under MCL § 600.2963, requiring certain filing fees to be paid by prisoners before filing civil suits. Howard previously had appeals rejected by both the Michigan Court of Appeals and the Michigan Supreme Court for failure to pay filing fees. While the district court was correct to dismiss Howard's claim that § 600.2963 was unconstitutional as applied to him, as that claim is barred by *Rooker-Feldman*, we conclude that the district court erred in deciding the merits of Howard's general challenge to the statute in deciding it lacked subject matter jurisdiction. The failure of a claim on the merits does not divest the district court of jurisdiction. We therefore hold that the district court erred in dismissing

that part of the complaint, and **REVERSE** the judgment of the district court.

## I. BACKGROUND

Given Howard's pro se status in the Michigan courts and in filing his initial complaint in the United States district court,[1] and the sparse nature of the state-court records filed in the district court, the procedural history of Howard's suit in the state courts is not entirely clear on appeal. On September 20, 2000, Howard and two other prisoners, James Tomzek ("Tomzek") and Stuart Trosky ("Trosky"), filed suit in the Ingham County Circuit Court, complaining of prison conditions, namely environmental tobacco smoke. On September 12, 2001, the suit was dismissed, presumably on the merits, as it was after extensive briefing. Along with the appeal filed by Tomzek and Howard,[2] a motion to waive fees was filed on January 2, 2002. When that motion was docketed, it was classified as only having been filed for Tomzek, and Howard's federal complaint seems to indicate that this was the case: "Plaintiff and Mr. Tomzek filed a claim of appeal along with a motion for waiver of fees and costs and prisoner account statement for Mr. Tomzek." Joint Appendix ("J.A.") at 12 (Compl.). It appears from Howard's complaint that he and Tomzek believed only one fee was necessary, and so filed a waiver for just Tomzek. The waiver motion is not in the Joint Appendix, nor does it appear to have been part of the record in the district court. In any case, that motion was denied on February 26, 2002, by Chief Judge Whitbeck. Tomzek paid the partial fee he had been directed to pay; Howard instead filed "an application to the Michigan

---

[1] Counsel was appointed by the district court subsequent to the filing of Howard's complaint, and the same appointed counsel represents Howard on appeal.

[2] No explanation appears for Trosky's nonparticipation in subsequent litigation.

Supreme Court," complaining that requiring two filing fees and denying the indigency application had been in error and that MCL § 600.2963(8), requiring filing fees for prior cases to be paid in full before subsequent suits can be filed, was unconstitutional. J.A. at 14-15 (Compl.). Because Howard did not pay the initial partial filing fee required by the February 26 order and refile his pleadings with that fee, his appeal was not officially filed.

The application Howard submitted to the Michigan Supreme Court does not appear in the Joint Appendix, but the docket sheet for Howard's suit in the Michigan Court of Appeals indicates that he filed an "Inter Application" to the Michigan Supreme Court on March 21, 2002. J.A. at 127. A motion to waive fees for the appeal to the Michigan Supreme Court appears on the Court of Appeals docket sheet as well; the entries for both "Sct Motion:Waive Fees" and "SctOrder:Denying Motion" are dated March 25, 2002, J.A. at 127, but Howard's appellate brief indicates that he filed the waiver at the same time as his application (i.e., March 21). The Michigan Supreme Court Order of March 25, 2002 required an initial partial filing fee of $21.00, which Howard did not pay, and his appeal to the Michigan Supreme Court was dismissed on May 8, 2002. On May 10, Howard submitted a "Motion For Show Cause Hearing" to the Michigan Court of Appeals, alleging three errors: the "split filing fee" (requiring money from both Howard and Tomzek); the denial of his motion for waiver of the fee; and that the refusal to file Howard's appeal had resulted in a constitutional violation. J.A. at 137-38 (Mot. For Show Cause Hr'g). This motion was returned to Howard on May 15 because he no longer had an appeal pending in the Michigan Court of Appeals.

On June 11, 2002, Howard filed a complaint in the United States District Court for the Western District of Michigan, asking for a declaratory judgment and a preliminary injunction against Chief Justice Corrigan and Chief Judge Whitbeck requiring them to accept his appeals despite his

failure to pay his filing fees. A motion to dismiss on the basis of the *Rooker-Feldman* doctrine was filed on August 9, 2002, by Chief Justice Corrigan and Chief Judge Whitbeck. Counsel was appointed for Howard on October 7, 2002, who filed a response to the motion to dismiss and a motion for summary judgment on November 15, 2002. On March 19, 2003, the district court granted Chief Justice Corrigan and Chief Judge Whitbeck's motion to dismiss. Howard filed a timely notice of appeal.

## II. ANALYSIS

### A. Standard of Review

We normally review de novo the district court's decision to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See COB Clearinghouse Corp. v. Aetna United States Healthcare, Inc.*, 362 F.3d 877, 880 (6th Cir. 2004). Where the district court does not merely analyze the complaint on its face, but instead inquires into the factual predicates for jurisdiction, the decision on the Rule 12(b)(1) motion resolves a "factual" challenge rather than a "facial" challenge, and we review the district court's factual findings for clear error. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). While this is a "factual" challenge, as the parties submitted exhibits relating to the state-court proceedings, the district court made no factual findings that would require deference.

### B. The Statute

The Michigan statute at issue, requiring the payment of partial filing fees before an action or appeal will be docketed, reads in its entirety:

### § 600.2963. Indigent prisoners; filing of civil action or appeal in civil action; submission of institutional account for payment of filing fees

Sec. 2963. (1) If a prisoner under the jurisdiction of the department of corrections submits for filing a civil action as plaintiff in a court of this state or submits for filing an appeal in a civil action in a court of this state and states that he or she is indigent and therefore is unable to pay the filing fee and costs required by law, the prisoner making the claim of indigency shall submit to the court a certified copy of his or her institutional account, showing the current balance in the account and a 12-month history of deposits and withdrawals for the account. The court then shall order the prisoner to pay fees and costs as provided in this section. The court shall suspend the filing of the civil action or appeal until the filing fee or initial partial filing fee ordered under subsection (2) or (3) is received by the court. If the court orders that a prisoner pay a filing fee or partial filing fee, all documents submitted by the prisoner that relate to that action or appeal shall be returned to the prisoner by the court along with 2 certified copies of the court order. An additional certified copy of the court order shall be sent to the department of corrections facility where the prisoner is housed. The prisoner then shall, within 21 days after the date of the court order, resubmit to the court all documents relating to the action or appeal, accompanied by the required filing fee or partial filing fee and 1 certified copy of the court order. If the filing fee or initial partial filing fee is not received within 21 days after the day on which it was ordered, the court shall not file that action or appeal, and shall return to the plaintiff all documents submitted by the plaintiff that relate to that action or appeal.

(2) If, upon commencement of the civil action or the filing of the appeal, the balance in the prisoner's institutional account equals or exceeds the full amount of

the filing fee required by law, the court shall order the prisoner to pay that amount.

(3) If, upon commencement of the civil action or the filing of the appeal, the balance in the prisoner's institutional account is less than the full amount of the filing fee required by law, the court shall require the prisoner to pay an initial partial filing fee in an amount equal to 50% of the greater of the following:

(a) The average monthly deposits to the prisoner's institutional account for the 12 months preceding the date on which the civil action is commenced or the appeal is filed.

(b) The average monthly balance in the prisoner's institutional account for the 12 months preceding the date on which the civil action is commenced or the appeal is filed.

(4) In determining the balance in a prisoner's institutional account for purposes of subsection (2) or (3), the court shall disregard amounts in the institutional account that are required by law or by another court order to be paid for any other purposes.

(5) In addition to an initial partial filing fee under subsection (3), the court shall order the prisoner to make monthly payments in an amount equal to 50% of the deposits made to the account. Payments under this subsection shall continue until the full amount of the filing fee is paid. The collection of payments from the account, and their remittal by the department of corrections, shall be conducted as provided in section 68 of 1953 PA 232, MCL 791.268. If costs are assessed against a prisoner, and if the balance of the prisoner's institutional account is not sufficient to pay the full amount of the costs assessed, the court shall order the prisoner to make payments in the same manner required in this section for the payment of filing fees, and the full amount of the costs shall be collected and paid in the manner provided in this subsection and in section 68 of 1953 PA 232, MCL 791.268.

(6) The total amount collected from a prisoner under subsections (3) to (5) shall not exceed the full amount of the filing fee and costs required by law.

(7) For purposes of this section, the fact of a prisoner's incarceration cannot be the sole basis for a determination of indigency. However, this section shall not prohibit a prisoner from commencing a civil action or filing an appeal in a civil action if the prisoner has no assets and no means by which to pay the initial partial filing fee. If the court, pursuant to court rule, waives or suspends the payment of fees and costs in an action described in subsection (1) because the prisoner has no assets and no means by which to pay the initial partial filing fee, the court shall order the fees and costs to be paid by the prisoner in the manner provided in this section when the reason for the waiver or suspension no longer exists.

(8) A prisoner who has failed to pay outstanding fees and costs as required under this section shall not commence a new civil action or appeal until the outstanding fees and costs have been paid.

(9) If a prisoner is ordered by a court to make monthly payments for the purpose of paying the balance of filing fees or costs under this section, the agency having custody of the prisoner shall remove those amounts from the institutional account of the prisoner subject to the order and, when an amount equal to the balance of the filing fees or costs due is removed, remit that amount as directed in the order.

MCL § 600.2963 (2000).

## C. The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine, named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), bars attempts by a federal plaintiff to receive appellate review

of a state-court decision in a federal district court.[3] Two categories of claims are barred by *Rooker-Feldman*: those which allege some injury arising directly from the state court's judgments, and those which allege an injury predating the state-court's judgments but which are still "inextricably intertwined" with state-court judgments. In determining whether a claim is in the first category, we look to the nature of the relief demanded and the particular injury alleged; "'the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" *Hutcherson v. Lauderdale County*, 326 F.3d 747, 755 (6th Cir. 2003). In determining whether a claim is in the second category, we look to Justice Marshall's test in *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring):

> [T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues

---

[3] The doctrine flows in large part from "the proposition that Congress has conferred appellate jurisdiction over state court judgments upon only one federal court, the Supreme Court of the United States." Thomas D. Rowe, Jr., Rooker-Feldman: *Worth Only the Powder to Blow it Up?*, 74 Notre Dame L. Rev. 1081, 1081 (1999). Its frequent use in the lower federal courts in recent years has been met with critical commentary. *See* Barry Friedman & James E. Gaylord, Rooker-Feldman, *From the Ground Up*, 74 Notre Dame L. Rev. 1129, 1133 (1999) (calling for *Feldman* to be overruled); Suzanna Sherry, *Judicial Federalism in the Trenches: The* Rooker-Feldman *Doctrine in Action*, 74 Notre Dame L. Rev. 1085, 1087-89 (1999) (describing "explosive growth" of the doctrine). We note in passing that when *Feldman* was decided, a party aggrieved by a state-court decision "against the validity of a treaty or Act of Congress, or in favor of the validity of a state statute attacked upon federal grounds" was entitled to mandatory review in the Supreme Court. Richard H. Fallon et al., Hart & Wechsler's The Federal Courts and The Federal System, at 494 (4th ed. 1996). The elimination of mandatory review in 1988 may affect the continuing vitality of the logic underlying *Rooker-Feldman*, but we are of course bound to follow that precedent of the Supreme Court and prior precedent of our own court that mandates the application of the doctrine.

before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*See Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 391 (6th Cir. 2002); *Anderson v. Charter Township of Ypsilanti*, 266 F.3d 487, 492-94 (6th Cir. 2001) (applying "inextricably intertwined" test to hold abstention appropriate).

An exception to the doctrine is that where a claim represents a "general challenge . . . to a state law implicated" in the state decision, the federal courts have jurisdiction over that general challenge. *Catz v. Chalker*, 142 F.3d 279, 294-95 (6th Cir. 1998); *see also Feldman*, 460 U.S. at 482-83 ("To the extent that Hickey and Feldman mounted a general challenge to the constitutionality of Rule 46I(b)(3), however, the District Court did have subject-matter jurisdiction over their complaints."). However, even where a general constitutional attack is mounted, the state proceedings may foreclose the federal claim under the doctrine of res judicata. *See Feldman*, 460 U.S. at 487-88 ("[W]e expressly do not reach the question of whether the doctrine of res judicata forecloses litigation on these elements of the complaints.").

## D. The District Court's Decision

The district court, after describing the *Rooker-Feldman* doctrine, classified Howard's claim as an as-applied challenge. Howard's complaint alleges that § 600.2963 is unconstitutional in denying access to the courts to indigents who are unable to pay the initial partial filing fee. The district court reasoned that because § 600.2963(7) allows for waiver of that fee, the statute was capable of constitutional application, and Howard could only be complaining of the application of the statute to his particular case. J.A. at 214. Having concluded that the "general challenge" exception to the *Rooker-Feldman* doctrine did not apply, the district court

went on to determine that Howard's federal claim was inextricably intertwined with the state-court decision, because for Howard to prevail, the district court "would necessarily be forced to conclude that Defendants' interpretation and application of the statute was improper." J.A. at 215. Finally, the district court noted that while Howard had fairly asserted a challenge to § 600.2963(8)—because subsection 8 bars future actions, its application would be challenged prospectively, and *Rooker-Feldman* would not apply—Howard lacked standing due to his failure to allege that he had any claim or appeal that he intended to file. J.A. at 219-20.

### E.  Claims of Error

On appeal, Howard does not contest the district court's conclusion that he lacked standing to challenge subsection 8, but he does argue that the *Rooker-Feldman* doctrine does not apply both because the actions of defendants in this matter were not "judicial acts" under *Feldman*, and because he has mounted a general challenge to § 600.2963. While this former argument fails, we conclude that Howard's complaint fairly presented a general challenge to the statute, sufficient to give the district court jurisdiction. Whether or not Howard's general challenge to the Michigan statute would ultimately succeed is irrelevant to the question of subject matter jurisdiction, as long as the claim presented is not frivolous. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248-49 (6th Cir. 1996) (in responding to a motion under Rule 12(b)(1), "the plaintiff can survive the motion by showing any arguable basis in law for the claim made"). Although Chief Justice Corrigan and Chief Judge Whitbeck take issue with whether or not Howard's pro se complaint fairly alleged a facial challenge, the district court was correct to conclude that it did. While the thrust of the complaint is definitely an "as-applied" challenge, the language used clearly indicates that the statute itself is also being challenged as unconstitutional, and under *Feldman* the dismissal of the as-applied claim on the basis of *Rooker-*

*Feldman* does not mean that the facial challenge cannot be allowed to proceed. J.A. at 10 (Compl.) (Howard seeks declaratory judgment that "*both* the defendants refusal to file Plaintiff's appeal *and* portions of said statute is unconstitutional" (emphases added)); *see Feldman*, 460 U.S. at 482-88. We conclude that Howard's complaint fairly presented a facial constitutional challenge over which the district court had jurisdiction.

Howard's remaining arguments, presumably directed towards preserving his "as-applied" challenge or a broader general challenge, all fail. First, Howard argues that the Michigan courts' actions were not "judicial determinations" within the meaning of *Feldman*, which distinguished judicial determinations from legislative determinations in concluding that bar membership decisions were judicial in nature. 460 U.S. at 478-79. Howard's main argument is that the courts could not exercise discretion because of the mandatory language in subsection 1. Howard asserts that despite the plain language of subsection 7, the safety-valve provision, because subsection 1 includes the mandatory language "shall," the Michigan courts have read subsection 7 out of the statute. In *Keenan v. Department of Corrections*, 644 N.W. 2d 756, 757 (Mich. 2002), the Michigan Supreme Court held that the phrase "outstanding fees and costs" in subsection 8 includes fees which are currently being paid on installment, even if full payment will eventually be made. Keenan had filed a previous action, from which fees were still outstanding, and was attempting to proceed in a subsequent action; the court did not allow the subsequent action because of the outstanding fees, despite Keenan's regular payments by installment. It is unclear where Howard finds any reference to subsection 7 in *Keenan*; there is no indication that Keenan applied for a waiver of fees in his initial action, or any sort of waiver or suspension of the operation of subsection 8 in the subsequent action. The court noted that Keenan argued "that he has not 'failed' to pay outstanding fees [under subsection 8] because the remainder of the filing fee is being taken out of his account on a monthly basis," *id.*, and rejected his

interpretation as contrary to the plain language of the statute. While *Keenan* is disturbing in that it operates to bar subsequent actions where plaintiffs are paying to the fullest of their ability, the injury suffered by Keenan is not that complained of by Howard. *Keenan* provides no support for Howard's specific claim of statutory meaning, however much support it provides for his general argument that the Michigan courts have applied § 600.2963 in a draconian fashion.

In *Palmer v. Oakland Circuit Judge*, 621 N.W. 2d 221, 221 (Mich. 2001), however, the Michigan Supreme Court held that merely because a prisoner had a zero account balance "does not necessarily mean that a prisoner" is qualified for waiver under subsection 7. To hold otherwise would give "the calculation provisions of subsections (3) and (4) . . . no effect." *Id.*; *see also Bennett v. McBride*, No. 01-1939, 2003 WL 1870913, *3 (6th Cir. Apr. 8, 2003) (citing *Palmer* and noting, "Under Michigan law, a prisoner's present account balance of zero does not necessarily mean that the prisoner is entitled to a waiver of an initial partial filing fee"). The statute, as authoritatively construed by the highest court of the state, thus allows prisoners who have insufficient funds to pay a filing fee to be denied the right to file a claim or an appeal. As discussed above, however, the Michigan courts have construed the statute to allow waivers in certain conditions, but not to require them whenever a prisoner is unable to pay an initial partial filing fee. This may be unconstitutional, but it still allows discretion: it *allows* waivers in situations where prisoners have a zero balance, it merely does not *require* them. In rejecting Howard's motions to waive the filing fees, the Michigan courts made judicial decisions that under state law they had discretion in making. We therefore cannot reach the greater question of whether those decisions violate the Constitution, as to reach that question would be to sit in review of the Michigan courts in violation of the *Rooker-Feldman* doctrine.

Howard then argues that the issues in his federal claim are not inextricably intertwined with the state-court claims. This

is not persuasive at the outset, because his case is most properly analyzed in the first category of *Rooker-Feldman* cases, where the complained-of injury is the decision of the state court. Howard seeks the sort of direct appeal of the state-court decisions which is not allowed, except to the extent that he mounts a general constitutional challenge to the statute. Additionally, it is impossible to determine whether his case is inextricably intertwined with the state-court decisions, because we do not have the actual motions for waiver filed with the Michigan courts. It is entirely possible that Howard included in those motions constitutional arguments, in which case the Michigan courts necessarily rejected those arguments in refusing to waive his initial filing fees. In any case, however, Howard is clearly barred from bringing an as-applied challenge under the first category of *Rooker-Feldman*; that the Michigan courts may not have decided the exact issues he brings before this court, a claim impossible to analyze on appeal, does not change the nature of the decision and relief he seeks from this court.

Howard finally argues that the statute is unconstitutional for a number of reasons. As mentioned above, it is quite possible that res judicata principles will foreclose the district court from reaching the merits of this claim, so remand is the appropriate course, especially in the absence of the motions submitted by Howard to the Michigan courts that will partially determine the res judicata effect of the prior judgments.

## III.  CONCLUSION

The district court's judgment is **REVERSED** and the case is **REMANDED** for further proceedings not inconsistent with this opinion.