NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0822n.06

No. 12-4158

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

*Sep 11, 2013*

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| COAST CANDIDATES PAC and COALITION OPPOSED TO ADDITIONAL SPENDING & TAXES | ) ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiffs-Appellants, | ) ) | STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| OHIO ELECTIONS COMMISSION, BRIAN FELMET, JAYME P. SMOOT, DEGEE WILHELM, TERRANCE J. CONROY, LYNN A. GRIMSHAW, KIMBERLY G. ALLISON, and HELEN E. BALCOLM | ) ) ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) | |

Before: GIBBONS and STRANCH, Circuit Judges; HOOD, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** In 2011, the general election ballot for the City of Cincinnati included a proposed amendment to the city charter that would have blocked the construction of a streetcar system in Cincinnati. During the campaign, the Coalition Opposed to Additional Spending & Taxes ("COAST"), a group that supported the amendment, posted several "tweets" on its Twitter feed about funding for the streetcar system. Cincinnatians for Progress, a

---

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

group that opposed the amendment, filed complaints with the Ohio Elections Commission ("the Commission") against COAST and COAST Candidates PAC, arguing that the "tweets" violated section 3517.22(B)(2) of the Ohio Revised Code, which prohibits the dissemination of false statements in connection with a ballot proposition or issue. COAST and COAST Candidates PAC filed suit against the Commission and its members in federal district court seeking a declaration that section 3517.22(B)(2) is unconstitutional on its face and as applied to them and asking the court to enjoin its enforcement. The district court granted the defendants' motion to dismiss the complaint, holding that the plaintiffs lack standing to sue. We affirm.

## I.

The Commission, an administrative body created under Chapter 3517 of the Ohio Revised Code, is charged with the enforcement of Ohio election laws, including section 3517.22.

Section 3517.22 provides that:

(B) No person, during the course of any campaign in advocacy of or in opposition to the adoption of any ballot proposition or issue, by means of campaign material, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, a press release, or otherwise, shall knowingly and with intent to affect the outcome of such campaign do any of the following:
. . . .
    (2) Post, publish, circulate, distribute, or otherwise disseminate, a false statement, either knowing the same to be false or acting with reckless disregard of whether it was false or not, that is designed to promote the adoption or defeat of any ballot proposition or issue.

Ohio Rev. Code Ann. § 3517.22 (West 2013).

No person can be prosecuted for violating Section 3517.22 unless a complaint first has been filed with the Commission. *Id.* at § 3517.153(C). A complaint may be filed by the secretary of state,

2

an official at the board of elections, or any person who submits an affidavit based on personal knowledge. *Id.* at § 3517.153(A). If a complaint alleging a violation of Section 3517.22 is filed ninety or fewer days before a general election, a panel of at least three members of the Commission must hold an expedited hearing in order "to determine whether there is probable cause to refer the matter to the full commission for a hearing." *Id.* at § 3517.156(A); *see also* §§ 3517.154(A)(2)(a) & 3517.156(B)(1).

At the expedited hearing, the panel can take one of three actions. It can (1) dismiss the complaint, (2) find that there is probable cause to refer the matter to the full Commission for further consideration, or (3) find that the evidence is insufficient for the panel to make a probable cause determination, in which case it must request that an attorney further investigate the complaint and refer the matter to the full Commission for a hearing. Ohio Rev. Code Ann. § 3517.156(C); Ohio Admin. Code § 3517-1-10(D)(3) (2013). If the matter is referred to the full Commission, it must hold a hearing to "determine whether . . . the violation alleged in the complaint has occurred." Ohio Rev. Code Ann. § 3517.155(A)(1) (West 2013). If the Commission finds that a violation of section 3517.22 has occurred, it must refer the matter to the county prosecutor. *Id.* at § 3517.155(D)(2); Ohio Admin. Code § 3517-1-14(C) (2013). It cannot impose a fine. Ohio Rev. Code Ann. § 3517.155(D)(2) (West 2013). A party may appeal an adverse determination of the Commission to the county's court of common pleas. *Id.* at §§ 119.12 & 3517.157(D).

COAST is an unincorporated association of individuals whose activities are focused in southwest Ohio. COAST Candidates PAC is a political action committee operated by COAST and registered with the Hamilton County Board of Elections. During the 2011 general election

3

campaign, COAST posted "tweets" on its Twitter account in support of "Issue 48," the amendment to the city charter that would have blocked the construction of a streetcar system in Cincinnati. For example, an October 21, 2011, "tweet" stated: "12.5% of the fire dept. browned out again today to pay for streetcar boondoggle that 62% think is a waste. @CFDHistory YES ON 48    No streetcar."

On October 28, 2011, Cincinnatians for Progress filed a complaint with the Commission alleging that twenty of the "tweets" violated Section 3517.22(B)(2) because they falsely stated that the city's fire department services were being "browned out" or reduced in order to fund the streetcar project. Cincinnatians for Progress filed the complaint against COAST Candidates PAC, even though it was COAST that operated the Twitter feed at issue. On November 3, 2011, a panel of the Commission held an expedited hearing on the complaint. COAST Candidates PAC argued that it did not "tweet" the allegedly false comments and that, in any event, the comments were "100 percent true and certainly protected speech under the First Amendment." The panel found that there was no probable cause to believe that COAST Candidates PAC had violated the law and dismissed the complaint.

On November 7, 2011, Cincinnatians for Progress filed a complaint against COAST and Mark W. Miller, COAST's treasurer, alleging that the same twenty "tweets" violated section 3517.22(B)(2). On November 17, 2011, a panel of the Commission held a hearing at which COAST argued that its statements were true. The panel concluded that there was no probable cause to believe that COAST had violated the law and dismissed the complaint.

Meanwhile, on November 1, 2011, COAST and COAST Candidates PAC sued the Commission and its members in federal district court seeking a declaration that section

4

3517.22(B)(2) is unconstitutional on its face and as applied to them and asking the court to enjoin its enforcement. They argued that their First Amendment rights were harmed because they "desire[d] to continue to disseminate and publish statements concerning Issue 48 in the days leading up the election," but they refrained from doing so because they were afraid of being "dragged" before the Commission. They further argued that they wished to "disseminate [their] position[s] on various initiative matters appearing on the ballot" after the election but anticipated that they would continue to temper their speech due to their concern about future enforcement actions.

COAST and COAST Candidates PAC filed a motion for a temporary restraining order and preliminary injunction. On November 2, 2011, the district court denied the motion and stayed the proceedings pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). The district court lifted the stay on December 22, 2011. Shortly thereafter, the Commission and its members moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on mootness, ripeness, and standing grounds.

The district court granted the motion to dismiss, holding that COAST and COAST Candidates PAC cannot satisfy the injury-in-fact requirement for constitutional standing. The district court noted that COAST and COAST Candidates PAC identify their injury as "chilled speech," but that subjective chill, without more, does not establish actual or imminent objective harm. Furthermore, the district court observed that COAST and COAST Candidates PAC cannot demonstrate a credible threat of prosecution under section 3517.22(B)(2).

**II.**

5

The district court granted the defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Challenges to subject matter jurisdiction are classified as facial or factual attacks. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). "A facial attack is a challenge to the sufficiency of the pleading itself." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (emphasis omitted). When evaluating a facial attack, the district court takes the allegations in the complaint as true, and if those allegations establish federal claims, then jurisdiction exists. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A factual attack "is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Ritchie*, 15 F.3d at 598. When a factual dispute arises, "the district court must . . .weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The district court "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* This court typically reviews *de novo* a district court's decision to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004). However, when a Rule 12(b)(1) motion involves a factual attack, this court reviews the district court's factual findings for clear error. *Id.*

The Commission and its members argue that the district court correctly characterized their argument as a factual attack on jurisdiction and, therefore, we should not disturb the district court's factual findings unless they are clearly erroneous. COAST and COAST Candidates PAC point out that the factual issues underlying the jurisdictional question are not in dispute and contend that we

should review the legal question of whether they have standing *de novo*. Although the district court characterized the defendants' argument as a factual attack, it held, based on the allegations in the complaint, that COAST and COAST Candidates PAC do not meet the requirements for constitutional standing. Where the district court essentially makes no factual findings in deciding that it lacks jurisdiction, we treat a Rule 12(b)(1) motion as a facial attack and review *de novo*. *Kohl v. United States*, 699 F.3d 935, 939 n.1 (6th Cir. 2012); *see also Howard*, 382 F.3d at 636-37 ("While this is a 'factual' challenge, as the parties submitted exhibits relating to the state-court proceedings, the district court made no factual findings that would require deference.").

## III.

### A.

The district court dismissed the plaintiffs' complaint on the basis of standing. On appeal, the parties focus primarily on standing. Therefore, we decide the case on this basis. However, we note that our recent decision in *Susan B. Anthony List v. Driehaus*, Nos. 11-3894 & 11-3925, 2013 WL 1942821 (6th Cir. May 13, 2013), another Ohio election law case to which COAST was a party, indicates that the plaintiffs' complaint could also be dismissed based on ripeness.

"Like standing, ripeness 'is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (*en banc*) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). "[T]he ripeness doctrine poses 'a question of timing' and counsels against resolving a case that is 'anchored in future events that may not occur as anticipated, or at all.'" *Driehaus*, 2013 WL 1942821, at *3 (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284

(6th Cir. 1997)). "Three factors guide the ripeness inquiry: '(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings.'" *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (quoting *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008)).

In *Driehaus*, Susan B. Anthony List ("SBA List") and COAST sued the Commission, challenging the constitutionality of provisions of Ohio's false statement statute dealing with candidates for public office. *Driehaus*, 2013 WL 1942821, at *1. A complaint had been filed with the Commission against SBA List, and a three-member panel determined that there was probable cause to believe that SBA List violated the law, but the complaint was withdrawn before the full Commission could reach a final decision or penalize SBA List. *Id.* at *1-2. We held that SBA List could not demonstrate the requirements for ripeness, including the likelihood that the harm alleged would come to pass. We observed that "the Commission never found that SBA List violated Ohio's false-statement law" and the Commission's past actions did not demonstrate that it was likely to threaten SBA List with prosecution in the future. *Id.* at *5. We explained:

> The Commission's probable-cause determination was not a final adjudication, a finding of a violation, or even a warning that SBA List's conduct violated Ohio law. While it green-lighted further investigation, the Commission expressed no opinion about the application of Ohio law to SBA List's speech. SBA List does not suggest that the probable-cause finding would carry any weight in the future     in this hearing or any other. And its contention that a preliminary assessment that a violation may have occurred establishes the threat of future harm finds no support in our cases. No sword of Damocles dangles over SBA List to justify its fears.

*Id.* Thus, we held that SBA List's claims were not ripe for review.[1]

Our reasoning in *Driehaus* applies even more forcefully here, where the initial panels did not even refer the complaints against COAST and COAST Candidates PAC to the full Commission but, rather, dismissed the complaints outright for lack of probable cause. Because COAST and COAST Candidates PAC cannot satisfy the likelihood of harm requirement for ripeness, their lawsuit could be dismissed based on ripeness alone. However, because the district court based its decision on standing and the parties focus on this issue on appeal, we consider whether COAST and COAST Candidates PAC have standing to sue.

**B.**

"Article III of the Constitution gives federal courts subject matter jurisdiction over actual cases or controversies, neither of which exists unless a plaintiff establishes his standing to sue." *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012). "Because federal courts sit solely to decide on the rights of individuals, standing is the threshold question in every federal case." *Id.* (internal quotation marks, alterations, and citations omitted).

In order to establish Article III standing, a plaintiff must meet three requirements:

First, the plaintiff must have suffered an injury in fact   an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of   the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of

---

[1]We also held that COAST's claims, which " stemm[ed] from the mere possibility that Ohio law will be pressed against it" were "even more speculative than SBA List's," because COAST had never been involved in a Commission proceeding and no individual had enforced or threatened to enforce the challenged laws against it. *Driehaus*, 2013 WL 1942821, at *8.

> some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, alterations, and citations omitted). Each element is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* at 561. A plaintiff's standing to sue is determined "as of the time the complaint is filed." *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001).

COAST and COAST Candidates PAC bring suit pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, "which provides the mechanism for seeking pre-enforcement review of a statute." *Magaw*, 132 F.3d at 279. "Where a plaintiff alleges that state action has chilled his speech, 'it is not necessary that [he] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.'" *Berry*, 688 F.3d at 296 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). However, a plaintiff seeking pre-enforcement review[2] "must still satisfy the injury-in-fact requirement by showing: (1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by

---

[2]The plaintiffs characterize COAST's claim as a pre-enforcement challenge. However, they argue that the complaint against COAST Candidates PAC was pending before the Commission at the time they filed suit and, therefore, the Commission enforced Section 3517.22(B)(2) against COAST Candidates PAC. This is incorrect. As previously discussed, the Commission took no action against COAST or COAST Candidates PAC  either before or after they filed suit in district court  and instead dismissed the complaints against them for lack of probable cause. Neither plaintiff was prosecuted for violating section 3517.22(B)(2), so both plaintiffs' claims are best characterized as pre-enforcement challenges. *See Driehaus*, 2013 WL 1942821, at *5 (observing that a probable cause determination by the Commission "is not a concrete application of state law that enables [a party] to claim that the law has been enforced against it") (internal quotation marks and citation omitted).

*COAST Candidates PAC, et al. v. Ohio Elections Comm'n, et al.*
No. 12-4158

a statute,' and (2) 'a credible threat of prosecution thereunder.'" *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

Section 3517.22(B)(2) prohibits a person from disseminating false statements, either knowing the statements to be false or with reckless disregard for their falsity, in connection with a ballot proposition or issue. COAST and COAST Candidates PAC do not claim that they intend to violate the statute by disseminating false statements, which is not a constitutionally protected activity. *Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 577 (6th Cir. 1991) ("[F]alse speech, even political speech, does not merit constitutional protection if the speaker knows of the falsehood or recklessly disregards the truth."). Rather, they claim that they desired to make true statements about Issue 48 prior to the November 2011 election and to disseminate their positions "on various initiative matters appearing on the ballot" after the election. They argue that their First Amendment right to engage in protected political speech has been harmed because they refrained from and continue to refrain from making true statements on political issues due to their fear of being "dragged" before the Commission. Thus, they allege that their speech both before and after the November 2011 election has been chilled.[3]

"[C]onstitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972). In *Laird*, the Supreme Court considered

---

[3]For purposes of standing analysis, "any distinction between claims of past and future (i.e., forward-looking) chill lacks purpose," and, therefore, we decline to make such a distinction. *Morrison v. Bd. of Educ.*, 521 F.3d 602, 609 n.7. (6th Cir. 2008).

11

> whether the jurisdiction of a federal court may be invoked by a complainant who alleges that the exercise of his First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data-gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose.

*Id.* at 10. The Court held that the plaintiffs could not demonstrate that they had suffered an injury sufficient to confer standing because the alleged chill arose "merely from the [plaintiffs'] knowledge that a governmental agency was engaged in certain activities [and] from the [plaintiffs'] concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to [the plaintiffs]." *Id.* at 11. The Court observed that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* at 13-14.

In *Morrison v. Board of Education of Boyd County*, we considered "what 'more' might be required to substantiate an otherwise-subjective allegation of chill, such that a litigant would demonstrate a proper injury-in-fact." 521 F.3d 602, 609 (6th Cir. 2008) (footnote omitted). Surveying sister circuits' precedent, we noted that "[a] non-exhaustive list includes the following: the issuance of a temporary restraining order; an eight-month investigation into the activities and beliefs of the plaintiffs by Department of Housing and Urban Development officials; and numerous alleged seizures of membership lists and other property belonging to the plaintiffs." *Id.* (internal quotation marks and citations omitted). We concluded "that for purposes of standing, subjective chill requires some specific action on the part of the defendant in order for the litigant to demonstrate an injury-in-fact." *Id.*

12

In *Morrison*, the plaintiff, a high school student, believed that homosexuality is a sin and that he had a responsibility to tell others when their conduct conflicted with his conception of Christian morality. *Id.* at 605. He brought a claim against the school board, arguing that his speech was chilled by a school policy prohibiting students from making stigmatizing or insulting comments about other students' sexual orientation. *Id.* We held that the plaintiff's "choice to chill his own speech based on his perception that he would be disciplined for speaking" did not constitute an injury in fact where "[t]he record [was] silent as to whether the school district threatened to punish or would have punished Morrison for protected speech in violation of its policy." *Id.* at 610. *Morrison* contrasts with *McGlone v. Bell*, in which we held that the plaintiff, an evangelical Christian who wished to speak on a college campus, could demonstrate that his speech was objectively chilled where school officials told him that he could not speak on campus without first obtaining a permit and, on one occasion, campus police threatened him with arrest if he did not stop speaking and leave campus. 681 F.3d 718, 729-31 (6th Cir. 2012).

COAST and COAST Candidates PAC argue that they have demonstrated more than subjective chill because at the time they filed their lawsuit, a complaint against COAST Candidates PAC was pending before the Commission and a complaint against COAST was imminent. Nonetheless, neither the Commission nor its members had taken any specific actions suggesting that the plaintiffs' alleged self-censorship was objectively reasonable. *See Morrison*, 521 F.3d at 609 (observing that the *defendant* must take a specific action against the litigant to demonstrate an injury in fact). Although Cincinnatians for Progress had filed complaints with the Commission against COAST Candidates PAC and later COAST, the defendants' actions did not indicate that Section

13

3517.22(B)(2) was likely to be enforced against the plaintiffs, and, in fact, the Commission dismissed the complaints for lack of probable cause. Thus, here there is only subjective chill.

Furthermore, COAST and COAST Candidates PAC cannot demonstrate a likelihood that Section 3517.22(B)(2) will be enforced against them in the future. "A threatened injury must be certainly impending to constitute injury in fact." *White v. United States*, 601 F.3d 545, 553 (6th Cir. 2010) (internal quotation marks and citation omitted). Previous sanctions against a plaintiff "might be 'evidence bearing on whether there is a real and immediate threat of repeated injury,'" but "where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

For example, in *Fieger v. Michigan Supreme Court*, the plaintiff, a Michigan attorney who twice had been charged with violating the "courtesy and civility" provisions of the Michigan Rules of Professional Conduct ("MRPC"), challenged the constitutionality of the provisions on their face. 553 F.3d 955, 957 (6th Cir. 2009). We held that the plaintiff could not demonstrate a reasonable threat of future sanction. *Id.* at 967. We observed that in order to demonstrate a palpable threat of future injury, plaintiffs challenging the disciplinary provisions would have to establish:

> (1) that they are now, or highly likely to be, speaking about a pending case; (2) that such speech will concern participants in that case and be vulgar, crude, or personally abusive, exposing them to sanctions under MRPC 3.5(c) or MRPC 6.5(a); (3) that the Michigan Supreme Court would, in its discretion, impose such sanctions; and (4) that the imposition of those sanctions would violate plaintiffs' First Amendment rights.

*Id.* We concluded "that such a chain of events is simply too attenuated to establish the injury in fact required to confer standing." *Id.*

14

Similarly, the chain of events upon which COAST's and COAST Candidates PAC's future prosecution depends is far too attenuated to confer standing. The district court observed that:

> the Commission itself cannot initiate any proceeding or investigate any person or entity on its own initiative. Instead, a complaint must be "by affidavit of any person, on personal knowledge, and subject to the penalties for perjury, or upon the filing of a complaint made by the secretary of state or an official at the board of elections." That means that Plaintiffs would need to make some statement in the future, then Cincinnatians for Progress, or some other group or individual, would need to file a groundless complaint against Plaintiffs, and Defendants would then fail to follow the provisions in Section 3517.22.[4]

(DE 26, Order, Page ID 371) Even if the Commission found that there was probable cause to believe that COAST or COAST Candidates PAC had violated section 3517.22(B)(2), the Commission could only make a recommendation to a county prosecutor, who would have discretion as to whether to proceed with prosecution. *See* Ohio Rev. Code Ann. § 3517.155(D)(2) (West 2013); Ohio Admin. Code § 3517-1-14(C) (2013). Thus, the threat of COAST's and COAST Candidates PAC's future injury "is highly conjectural, resting on a string of actions the occurrence of which is merely speculative." *Grendell*, 252 F.3d at 833.

Because COAST and COAST Candidates PAC cannot demonstrate "(1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and (2) a credible threat of prosecution thereunder," they cannot establish an injury in fact sufficient to provide them with standing to bring their pre-enforcement challenge to Section 3517.22(B)(2). *See Berry*, 688 F.3d at 296 (internal quotation marks and citation omitted).

---

[4]That is, the Commission would have to punish COAST and COAST Candidates PAC for true, protected speech instead of the false, unprotected speech prohibited by section 3517.22.

15

**VI.**

COAST and COAST Candidates PAC lack standing to bring their claims. Alternatively, their claims are not ripe for review. Therefore, we affirm the district court's dismissal of the plaintiffs' complaint. We also deny their motion[5] for the court to take judicial notice of a proposed *amicus* brief submitted to the district court by Ohio Attorney General Michael DeWine because we find that the issues in this case can be decided without reference to the brief or the material contained therein.

---

[5]On March 27, 2013, COAST and COAST Candidates PAC filed a motion for the court to take judicial notice a proposed *amicus* brief submitted to the district court by Ohio Attorney General Michael DeWine. The brief, which was filed in support of neither party, expresses "serious concerns about the constitutionality of Ohio's generalized 'false statement' law subsections." We deferred a ruling until after the case was heard on the merits.